# Exhibit A

D2

THE TIDRICK LAW FIRM LLP
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 788-5100
Facsimile: (510) 291-3226
E-mail: sgt@tidricklaw.com
E-mail: jby@tidricklaw.com

Attorneys for Individual and Representative Plaintiff JANE ROE

FILED
SAN MATEO COUNTY
SEP 10 2019
Clerk of the Superior Court
By DEPUTY CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

UNLIMITED JURISDICTION

JANE ROE, on behalf of herself and all others similarly situated,

Plaintiff,

v.

JOSE TORRES L.D. LATIN CLUB BAR, INC.; HANKY PANKY CLUB; and DOES 1-200,

Defendants.

17-CIV-05530
ACM
Amended Complaint
2032218

Civil Case No. 17CIV05530

CLASS ACTION

**SECOND AMENDED COMPLAINT FOR VIOLATIONS AND/OR RECOVERY OF:**
**(1) CALIFORNIA LABOR CODE;**
**(2) CALIFORNIA INDUSTRIAL WELFARE COMMISSION WAGE ORDERS;**
**(3) CALIFORNIA'S UNFAIR COMPETITION ACT, BUS. & PROF. CODE §§ 17200 *et seq.*;**
**(4) PENALTIES UNDER THE LABOR CODE PRIVATE ATTORNEYS GENERAL ACT OF 2004, CALIFORNIA LABOR CODE § 2699(a),(f) ("PAGA" CLAIMS);**
**(5) FAIR LABOR STANDARDS ACT; and**
**(6) REDWOOD CITY MINIMUM WAGE ORDINANCE**

**JURY TRIAL DEMANDED**

File By Fax

Plaintiff Jane Roe, on behalf of herself and all others similarly situated, alleges as follows:

## I. NATURE OF THE CASE

1. Plaintiff has worked for Jose Torres L.D. Latin Club Bar, Inc. and/or Hanky Panky Club (collectively, "Defendant") as an "exotic dancer." She seeks to represent classes

consisting of all individuals who, during the relevant class periods, have worked as exotic dancers at the nightclub in Redwood City, California that Defendant has operated and controlled, and where Defendant has dictated employment policies. All class members have been denied fundamental rights under federal, state, and local wage and hour laws in a similar and uniform way. Defendant has misclassified Plaintiff and class members as independent contractors, as opposed to employees, at all times when they have worked as exotic dancers. Defendant has failed to pay Plaintiff and class members the minimum wages and other benefits to which they were entitled under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the California Labor Code, the California Industrial Welfare Commission Wage Orders, and the Redwood City Minimum Wage Ordinance. Additionally, Defendant has engaged in unlawful tip-splitting by requiring Plaintiff and class members, who receive gratuities from customers, to tip and/or split and share gratuities with Defendant and/or its other workers, such as managers, doormen, and disc jockeys (DJs). Plaintiff therefore brings this class action seeking damages, back pay, restitution, liquidated damages, applicable civil penalties, prejudgment interest, reasonable attorneys' fees and costs, civil penalties, declaratory and injunctive relief, and all other relief that the Court deems just, reasonable, and equitable.

2. Plaintiff also prosecutes this case under the Labor Code Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq.* ("PAGA"), on behalf of herself and others currently and formerly employed by Defendant as exotic dancers, to recover civil penalties for Defendant's violations of law, pursuant to the procedures in Labor Code § 2699.3. Plaintiff brings this action to enforce California law. "The purpose of the PAGA is . . . to create a means of "deputizing" citizens as private attorneys general to enforce the Labor Code." *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489, 501 (2011). "Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.' *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 380 (2014) (quoting Cal. Lab. Code § 2699, subd. (i)). "[A]n aggrieved employee acting as the LWDA's proxy or agent by bringing a PAGA action may

likewise recover underpaid wages as a civil penalty under section 558." *Thurman v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1148 (2012). "[T]he language of section 558, subdivision (a) . . . provid[es] a civil penalty that consists of both the $50 or $100 penalty amount and any underpaid wages, with the underpaid wages going entirely to the affected employee or employees as an express exception to the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees (§ 2699, subd. (i))." *Id.* at 1145.

## II. JURISDICTION AND VENUE

3. The Court has personal jurisdiction over Defendant pursuant to California Code of Civil Procedure § 410.10 because it is headquartered in California, is doing business in California, has committed acts and/or omissions in California with respect to a cause of action arising from these acts or omissions, and/or has caused effects in California with respect to a cause of action arising from these acts and/or omissions.

4. Venue is proper in San Mateo County in accordance with California Code of Civil Procedure §§ 395 and 395.5 because the alleged activities and injuries took place in this county

## III. PARTIES

5. Plaintiff Jane Roe No. 1 ("Roe No. 1") worked as an exotic dancer for Defendant in Redwood City, California during the class period and is a member of the proposed class. Like other class members, when Roe No. 1 worked in that capacity, she was: (1) misclassified as an independent contractor, and as a result was not paid any wages (or provided other benefits and rights) to which she was entitled as an employee; and (2) required to split tip income as described more fully below. Roe No. 1 sues on her own behalf, as a proposed class representative on behalf of similarly situated individuals, and as a PAGA representative plaintiff on behalf of other current and former employees. She sues under a fictitious name, Jane Roe No. 1, due to the highly sensitive and personal nature of the details about Plaintiff in this action, and for additional reasons described below. A true and correct

copy of Jane Roe No. 1's executed "Consent to Become Party Plaintiff" is attached hereto as **Exhibit A**, which has been redacted in order to protect her privacy.

6. Plaintiff sues under a fictitious name due to the highly sensitive and personal nature of the details about Plaintiff in this action and because (1) there is a significant social stigma associated with the nude and semi-nude "dancing" that exotic dancers, also known as "strippers," perform; (2) there are risks inherent in working as an exotic dancer, including risk of injury by current or former customers of Defendant if an exotic dancer's name or address is disclosed; (3) Plaintiff would be hesistant to maintain this action enforcing fundamental employee rights if her name were to be forever associated with Defendant's nightclub, which could affect her prospects for future employment by others; and (4) Plaintiff wishes to protect her rights to privacy. Plaintiff's concerns are reasonable and justified. It is customary for the exotic dancers to use pseudonyms or stage names for privacy and personal safety reasons.

7. Plaintiff intends to file additional Consents to Become Party Plaintiff executed by similarly situated individuals as they are secured. Many similarly situated individuals, however, will be afraid to join the lawsuit as party plaintiffs because of reasonable fears relating to privacy, personal safety, and/or the potential for retaliation. In order to allow them to pursue their rights under the FLSA without jeopardizing their privacy, personal safety, or income, Plaintiff prays that the Court permit party plaintiffs to keep their names and addresses concealed.

8. Defendant Jose Torres L.D. Latin Club Bar, Inc. maintains ownership, recruitment, and/or operational interests in a nightclub featuring nude or semi-nude dancing in California, specifically, the nightclub doing business as Hanky Panky Club in Redwood City, California (the "Nightclub").

9. Defendant Hanky Panky Club is a nightclub in Redwood City, California.

10. The true names and capacities, whether individual, corporate, associate or otherwise, of each of the Defendants designated herein as DOES are unknown to Plaintiff at this time and therefore said Defendants are sued by such fictitious names. Plaintiff will amend this Complaint to show their true names and capacities when ascertained. Plaintiff is

informed and believes and thereon alleges that each Defendant designated herein as a DOE defendant is legally responsible in some manner for the events and happenings herein alleged and in such manner proximately caused damages to Plaintiff as hereinafter further alleged.

11. Plaintiff is informed and believes and thereon alleges that each of the Defendants was acting as the agent, employee, partner, or servant of each of the remaining Defendants and was acting within the course and scope of that relationship, and gave consent to, ratified, and authorized the acts alleged herein.

## IV. GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

12. At all relevant times Defendant employed and/or jointly employed all exotic dancers working in the Nightclub, and managed, directed and controlled the exotic dancers through various policies, practices, and decisions, including but not limited to the following: (1) to misclassify exotic dancers as independent contractors, as opposed to employees; (2) to require that exotic dancers split their table dance tips with Nightclub; (3) to require that exotic dancers tip and/or further split their table dance tips with managers, doormen, floor walkers, DJs and other workers who do not usually receive tips, by paying "tip-outs;" (4) to not pay exotic dancers any wages; (5) to demand improper and unlawful payments from exotic dancers; (6) to adopt and implement employment policies which violate the FLSA, the California Labor Code, California Business & Professions Code §§ 17200 *et seq.* (the "UCL"), and the Redwood City Minimum Wage Ordinance; and/or (7) to threaten retaliation against any exotic dancer attempting to assert her statutory rights to be classified as an employee.

13. The FLSA, the California Labor Code, and the Redwood City Minimum Wage Ordinance applied to the class members when they worked at the Nightclub. No exceptions to the application of the FLSA, the California Labor Code, or the Redwood City Minimum Wage Ordinance apply to Plaintiff and the class. The exotic dancing performed by class members while working at the Nightclub does not require invention, imagination, or talent in a recognized field of artistic endeavor, and class members have never been compensated by Defendant on a set salary, wage, or fee basis. Rather, class members' sole source of income

while working at the Nightclub has been a portion of tips given to them by customers (*e.g.*, table dance tips and stage dance tips).

14. At relevant times, Plaintiff and class members are or were employees of Defendant under the FLSA, the California Labor Code, and the Redwood City Minimum Wage Ordinance but misclassified as independent contractors. During the relevant time period, numerous women have worked as exotic dancers at Defendant's Nightclub without being paid any minimum wages, and have been denied other rights and benefits of employees.

15. At relevant times, Defendant has been the employer of Plaintiff and class members under the FLSA, the California Labor Code, and the Redwood City Minimum Wage Ordinance. Defendant suffered or permitted class members to work. Defendant has directly or indirectly employed, and exercised significant control over the wages, hours, and working conditions of, Plaintiff and class members.

16. During the relevant time period, the employment terms, conditions, and policies that applied to Plaintiff were the same as those applied to the other class members.

17. Throughout the relevant time period, Defendant's policies and procedures regarding the classification of all exotic dancers (including Plaintiff) at its Nightclub and treatment of dance tips were the same in all material respects. As a matter of uniform policy, Defendant has systematically misclassified Plaintiff and all class members as independent contractors, as opposed to employees. Defendant's classification of Plaintiff and class members as independent contractors was not due to any unique factor related to the exotic dancers' employment by or relationship with Defendant. Rather, as a matter of its uniform business policy, Defendant has routinely misclassified exotic dancers as independent contractors as opposed to employees. As a result of this practice of misclassification, Plaintiff and the class members have not been paid the minimum wages under the FLSA, the California Labor Code, and the Redwood City Minimum Wage Ordinance and have been deprived of other statutory rights and benefits. Therefore, they have suffered harm, injury, and have incurred financial loss.

18. Plaintiff and class members have incurred financial loss, injury, and damage as

a result of Defendant's common policies and practices of misclassifying them as independent contractors and failing to pay them minimum wages in addition to the tips that they were given by customers. The named Plaintiff's injuries and financial losses have been caused by Defendant's application of those common policies and practices in the same manner as Defendant has applied them to absent class members.

19. During the relevant time period, no class member has received any wages or other compensation from Defendant. Members of the class have generated income solely through tips received from customers when they have performed exotic table, chair, couch, lap, and/or VIP room "dances" (hereinafter collectively referred to as "table dance tips").

20. All monies that class members such as Plaintiff have received from customers when they performed "dances" were tips, not wages or service fees. Tips belong to the person to whom they are given. Table dance tips were given by customers directly to the class members and therefore belong to the class members, not Defendant.

21. The full amount that class members are given by customers for exotic "dances" they perform are not taken into Defendant's gross receipts with a portion paid out to the exotic dancers. Defendant does not issue W-2 forms, 1099 forms, or any other documentation to class members indicating any amounts paid from gross receipts to class members as wages.

22. Plaintiff and class members are tipped employees as they are engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips. No tip credits offsetting any minimum wages due, however, are permitted. *See* California Labor Code § 351. Therefore, as employees of Defendant, class members are entitled (i) to receive the full minimum wages due under the California Labor Code, without any tip credit, and (ii) to retain the full amount of any table dance tips and monies given to them by customers when they perform exotic "dances."

23. Defendant's misclassification of Plaintiff and class members as independent contractors was designed to deny class members their fundamental rights as employees to receive minimum wages, to demand and retain portions of tips given to class member by customers, and done to enhance Defendant's profits at the expense of the class.

24. Defendant's misclassification of Plaintiff and class members was willful. Defendant knew or should have known that Plaintiff and class members performing the "exotic dancing" job functions were improperly misclassified as independent contractors.

25. Employment is defined with "striking breadth" in the wage and hour laws. The determining factors as to whether exotic dancers such as Plaintiff are employees or independent contractors under the FLSA, the California Labor Code, and the Redwood City Minimum Wage Ordinance are not the exotic dancer's purported "election," any subjective intent, or any purported contract. *See, e.g., S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations*, 48 Cal. 3d 341, 356-57 & n.7 (1989). Rather, the test for determining whether an individual is an "employee" is the economic reality test. Under that test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or rather is economically dependent upon finding employment by others.

26. Under the applicable test, courts utilize several factors to determine economic dependence and employment status. They include the following: (i) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

27. The totality of circumstances surrounding the employment relationship between Defendant and the class establishes economic dependence by the class on Defendant and the class members' employee status. The economic reality is that Plaintiff and class members are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in others, namely Defendant. The class members are not engaged in occupations of businesses distinct from that of Defendant. Rather, their work is the basis for Defendant's business. Defendant obtains the customers who desire exotic dance entertainment and Defendant provides the customers with its workers, the class members. The class members conduct the exotic dance "services" on

behalf of Defendant. Defendant retains pervasive control over the nightclub operations as a whole, and the exotic dancers' duties are an integral part of Defendant's operations.

**A. Degree of Control – Plaintiff and The Other Exotic Dancers Exercise No Control Over Their "Own" or Their Employer's Business**

28. Plaintiff and the class members do not exert control over a meaningful part of the Defendant's nightclub business and do not stand as separate economic entities from Defendant. Defendant exercises control over all aspects of the working relationship with Plaintiff and class members.

29. Class members' economic status is inextricably linked to those conditions over which Defendant has complete control. Plaintiff and the other exotic dancers are completely dependent on Defendant's Nightclub for their earnings. Defendant controls all of the advertising and promotion without which the exotic dancers could not survive economically. Moreover, Defendant creates and controls the working conditions, atmosphere, and surroundings at the Nightclub, the existence of which dictates the flow of customers. The exotic dancers have no control over the customer volume or the working conditions.

30. Defendant has maintained guidelines and rules dictating the way in which exotic dancers such as Plaintiff must conduct themselves while working at the Nightclub. Defendant sets the hours of operation; length of shifts the exotic dancers must work; the show times during which an exotic dancer may perform; minimum table dance tips; the sequence in which an exotic dancer may perform on stage during her stage rotation; the format and themes of exotic dancers' performance (including their apparel and appearance); theme nights; conduct while at work (*e.g.*, that they be on the floor as much as possible when not on stage and mingle with customers in a manner that supports Defendant's general business plan); pay tip-splits; pay "tip-outs" to managers, doormen and other employees who do not normally receive tips from customers; require that exotic dancers help sell a minimum number of drinks to customers (or be penalized and have to buy the drinks themselves); and all other terms and conditions of employment.

31. Defendant requires that Plaintiff and the other class members schedule work

shifts. Defendant requires that each shift worked by an exotic dancer be of a minimum number of hours. Further, Defendant requires exotic dancers such as Plaintiff to clock in and clock out (or otherwise check in or report) at the beginning and end of each shift. If late or absent for a shift, an exotic dancer is subject to fine, penalty, or reprimand by Defendant. Once a shift starts, an exotic dancer is required to complete the shift and cannot leave early without penalty or reprimand.

32. While working at the Nightclub, Plaintiff and class members perform exotic table, chair, couch, lap and/or VIP room "dances" for customers offering them tips (referred to herein "table dance tips" or "tips"). Defendant, not the exotic dancers, sets the minimum tip amount that exotic dancers must collect from customers when performing exotic "dances." Defendant announces the minimum tip amounts to customers in the nightclub desiring table "dances."

33. Defendant dictates the manner and procedure in which table dance tips are collected from customers and tracked.

34. Defendant requires that exotic dancers pay rent.

35. In addition, Defendant requires that exotic dancers pay tips and/or per-dance amounts of "tip-outs" to the Defendant's nightclub managers, dance checkers, DJs, bouncers, door staff, and/or other workers as part of Defendant's tip-splitting policy.

36. The foregoing facts demonstrate that Defendant controls and sets the terms and conditions of all work by the exotic dancers. This is the hallmark of economic dependence and control.

**B. Skill and Initiative of a Person in Business for Herself**

37. Plaintiff, like all other class members, does not exercise the skills and initiative of a person in business for themselves.

38. Plaintiff, like all other class members, is not required to have any specialized or unusual skills to work at Defendant's Nightclub. Prior dance experience is not required to perform at Defendant's Nightclub. Exotic dancers are not required to attain a certain level of specialized or unusual skill in order to work at Defendant's Nightclub.

39. Plaintiff and class members do not have the opportunity to exercise business skills and initiative necessary to elevate their status to that of independent contractors. Plaintiff and class members own no enterprise. They exercise no business management skills. They maintain no separate business structures or facilities. They exercise no control over the customer volume, working conditions, or atmosphere at Defendant's Nightclub. They do not actively participate in any effort to increase the Defendant's customer base, enhance goodwill, or establish contracting possibilities. The scope of an exotic dancer's initiative is restricted to what apparel, if any, to wear (within Defendant's strict guidelines) or how provocatively to dance, a scope of initiative that is consistent with the status of an employee as opposed to the status of an independent contractor.

40. Plaintiff and Class members are not permitted to hire or subcontract other qualified individuals to provide additional "dances" to customers and increase their revenues, as an independent contractor in business for themselves would.

**C. Relative Investment**

41. Plaintiff's and class members' relative investment is minor when compared to the investments made by Defendant. Plaintiff and class members have made no capital investment in the facilities, advertising, maintenance, sound system and lights, food, beverage, and other inventory, or staffing, of Defendant's Nightclub. Defendant provides investment and risk capital. Plaintiff and class members do not. Other than their time and labor, any investment by Plaintiff and class members has been limited to expenditures on some apparel and make-up. But for Defendant's provision of the nightclub environment that Defendant has designed to please its customers (an environment that presents the exotic dancers to customers in a manner that Defendant has designed to increase Defendant's own profits), Plaintiff and the class members would earn nothing from their relatively minor expenditures.

**D. Opportunity for Profit and Loss**

42. Defendant, not the class members, manages all aspects of the business operation including attracting investors, establishing the hours of operation, setting the working conditions and atmosphere, coordinating advertising, hiring and controlling the staff

(managers, waitresses, bartenders, bouncers/doormen, etc.). Defendant, not the class members, takes the true business risks for the Nightclub. Defendant, not the class members, has responsibility for attracting investors required to provide the capital necessary to open, operate, and expand the nightclub business.

43. Plaintiff and class members do not control the key determinants of profit and loss of a successful enterprise. Plaintiff and class members are not responsible for any aspect of the enterprise's on-going business risk. For example, Defendant, not the class members, has responsibility for financing, the acquisition and/or lease of the physical facilities and equipment, inventory, the payment of wages (for managers, bartenders, doormen, and waitresses), and obtaining appropriate business insurance and licenses. Defendant, not the exotic dancers, establishes the minimum table dance tip amounts to be collected from customers for "dances." Even with respect to any "rent" payments, the exotic dancers do not truly pay "rent" for exclusive use of space. Rather, the term "rent" is a misnomer or subterfuge for tip-splitting.

44. The extent of the immediate financial risk that Plaintiff and class members bear is the loss of any "base rent" fee that Defendant collects after each exotic dancer's shift. Defendant, not the exotic dancers, bears the risk of loss. For example, the table dance tips the exotic dancers receive are not a return for risk on capital investment. They are a gratitude for services rendered. Thus, it is clear that an exotic dancer's "return on investment" (*i.e.*, tips) is illusory, and no different than that of a waiter who serves food during a customer's meal at a restaurant.

**E. Permanency**

45. Certain class members have worked at Defendant's Nightclub as exotic dancers for significant periods of time.

**F. Integral Part of Employer's Business**

46. The exotic dancers are essential to the success of Defendant's Nightclub. The continued success of Defendant's Nightclub depends to a significant degree upon the provision of exotic "dances" by class members for Defendant's customers. The primary

reason that the Nightclub exists is to showcase the exotic dancers' physical attributes for customers and for the exotic dancers to perform "lap dances" for customers. The primary "product" or "good" that Defendant is in business to sell to customers that come to its Nightclub are the class members' bodies and the "lap dances" that the class members perform. Defendant recruits class members to work in its Nightclub and instructs them to work in specific ways.

47. The foregoing facts demonstrate that exotic dancers such as Plaintiff and the class members are economically dependent on Defendant and subject to significant control by Defendant. Therefore, Plaintiff and class members have been misclassified by Defendant as independent contractors and should have been paid minimum wages at all times when they have worked at Defendant's Nightclub and otherwise should have been afforded all rights and benefits of employees under the state wage and hour laws.

**G. Defendant's Intent**

48. All of Defendant's actions and agreements as described herein were willful, intentional, and not the result of mistake or inadvertence.

49. Defendant was aware that the FLSA, the California Labor Code, and the Redwood City Minimum Wage Ordinance applied to its operation of the Nightclub at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, it misclassified the exotic dancers as independent contractors. Defendant was subject to, or aware of, previous litigation and enforcement actions that successfully challenged the misclassification of exotic dancers as independent contractors. Further Defendant was aware, and on actual or constructive notice, that California Labor Code § 350(e), § 351, and A.B. 2509 rendered all table dance tips the exotic dancer's sole property, and rendered Defendant's tip-share, rent, and tip-out policies unlawful. Despite being on notice of its violations, Defendant intentionally chose to continue to misclassify the exotic dancers, withhold payment of minimum wages, and require the exotic dancers to split their tips with Defendant and its other workers, in order to enhance its profits. Such conduct and agreements were intentional, unlawful, fraudulent, deceptive, unfair, and

contrary to public policy.

**H. Injury and Damage**

50. Plaintiff and all class members have suffered injury, have been harmed, and have incurred damage and financial loss as a result of Defendant's conduct complained of herein. Among other things, Plaintiff and the class have been entitled to minimum wages and have been entitled to retain all of the table dance tips and other tips they were given by customers, but Defendant has denied them these rights, and thereby has injured Plaintiff and the class members, and caused them financial loss, harm, injury, and damage.

**CLASS ACTION AND COLLECTIVE ACTION ALLEGATIONS**

51. Plaintiff brings the First through Seventh and Eleventh Causes of Action (the California state law claims and the Redwood City Minimum Wage Ordinance claims) as an "opt-out" class action pursuant to Code of Civil Procedure section 382, defined initially as follows, and hereinafter referred to as the "California Class":

> All California residents who have worked in California for Defendant(s) as an exotic dancer at any time on or after the date three (3) years before the filing of this action.

Excluded from the California Class is anyone employed by counsel for Plaintiff in this action, and any Judge to whom this action is assigned and his or her immediate family members.

52. Plaintiff brings the Eighth Cause of Action (the claims under § 17200 *et seq.*) as an "opt-out" class action pursuant to Code of Civil Procedure section 382, defined initially as follows, and hereinafter referred to as the "Section 17200 Class":

> All California residents who have worked in California for Defendant(s) as an exotic dancer at any time on or after the date four (4) years before the filing of this action.

Excluded from the class is anyone employed by counsel for Plaintiff in this action, and any Judge to whom this action is assigned and his or her immediate family members.

53. Plaintiff brings the Tenth Cause of Action (for violations of the FLSA) as an "opt-in" collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b) on behalf of themselves and a proposed collection of similarly situated individuals defined as follows,

and hereinafter referred to as the "FLSA Collection":

> All individuals who have worked in California for Defendant(s) as an exotic dancer at any time on or after the date three (3) years before the filing of this complaint.

54. Plaintiff, individually, and on behalf of all others similarly situated as defined above, seeks relief on a collective basis challenging Defendant's policy and practice of failing to pay for all hours worked plus applicable overtime and failing to accurately record all hours worked. Named Plaintiff and the FLSA Collection are similarly situated, have performed substantially similar duties for Defendant, and have been uniformly subject to Defendant's uniform, class-wide payroll practices that are ongoing, including Defendant's policy of and practice of not compensating class members for compensable time as described herein. The number and identity of other similarly situated persons yet to opt-in and consent to be party plaintiffs may be determined from the records of Defendant, and potential opt-ins may be easily and quickly notified of the pendency of this action.

55. The names and addresses of the individuals who comprise the FLSA Collection are available from Defendant. Accordingly, Plaintiff prays for an Order requiring Defendant to provide the names and all available locating information for all members of the FLSA Collection, so that notice can be provided regarding the pendency of this action, and of such individuals' right to opt-in to this action as party plaintiffs

56. Numerosity. Defendant has employed numerous individuals as exotic dancers during the relevant time periods.

57. Existence and Predominance of Common Questions. Common questions of law and/or fact exist as to the members of the proposed classes and, in addition, common questions of law and/or fact predominate over questions affecting only individual members of the proposed classes. The common questions include the following:

a. Whether Defendant's policy and practice of not paying exotic dancers the minimum wage and/or at one-and-a-half (1.5) times the regular rate of pay (*i.e.*, time-and-a-half) for all hours worked in excess of forty hours in a

week or eight hours in a day violates the FLSA, California labor laws, and/or the Redwood City Minimum Wage Ordinance;

b. Whether Defendant's payroll policies and practices have violated the FLSA, California law, and/or the Redwood City Minimum Wage Ordinance;

c. Whether Defendant's practices have violated the FLSA, the UCL, and/or the Redwood City Minimum Wage Ordinance;

d. Whether the class members are entitled to unpaid wages, waiting time penalties, and other relief;

e. Whether Defendant's affirmative defenses, if any, raise common issues of fact or law as to Plaintiff and the class members; and

f. Whether Plaintiff and the proposed classes are entitled to damages and equitable relief, including, but not limited to, restitution and a preliminary and/or permanent injunction, and if so, the proper measure and formulation of such relief.

58. Typicality. Plaintiff's claims are typical of the claims of the proposed classes. Defendant's common course of conduct in violation of law as alleged herein has caused Plaintiff and the proposed classes to sustain the same or similar injuries and damages. Plaintiff's claims are therefore representative of and co-extensive with the claims of the proposed classes.

59. Adequacy. Plaintiff is an adequate representative of the proposed classes because her interests do not conflict with the interests of the members of the classes she seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the proposed classes.

60. Superiority. The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the proposed classes, while meaningful on an individual basis, is not of such magnitude as to

make the prosecution of individual actions against Defendant economically feasible. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

61. In the alternative, the proposed classes may be certified because the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication with respect to individual members of the proposed classes that would establish incompatible standards of conduct for Defendant; and Defendant has acted and/or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to members of the proposed classes as a whole.

**PRIVATE ATTORNEY GENERAL ALLEGATIONS**

62. In addition to asserting class action claims in this action, Plaintiff asserts claims as a private attorney general action on behalf of members of the general public pursuant to the UCL. The purpose of such claims is to require Defendant to disgorge and restore all monies wrongfully obtained by Defendant through its unlawful business acts and practices. A private attorney general action is necessary and appropriate because Defendant has engaged in the wrongful acts described herein as a general business practice. Under the UCL, Plaintiff pursues said representative claims and seeks relief on behalf of herself and the proposed classes pursuant to Code of Civil Procedure section 382.

**FIRST CAUSE OF ACTION**

**Failure to Pay All Straight Time Worked in Violation of Calif. Labor Code § 1194, 1194.2, 1197, 1197.1, 1198**

63. Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

64. California Labor Code §§ 1194, 1194.2, 1194.5, 1197, 1197.1 and 1198 provide for a private right of action for nonpayment of wages, and further provides that a

plaintiff may recover the unpaid balance of the full amount of such wages, together with costs of suit, as well as liquidated damages, interest thereon, injunctive relief, and the attorneys' fees and costs incurred.

65. At all relevant times, Defendant has been required to pay the exotic dancers minimum wages under California law, including without limitation pursuant to IWC Wage Order Nos. 4, 5, and/or 10, but has not done so. Defendant has willfully failed to pay Plaintiff and class members any wages whatsoever. By failing to compensate them for all hours worked, Defendant has violated IWC Wage Order Nos. 4, 5, and/or 10 and/or California Labor Code §§ 1182.12, 1194, 1194.2, 1194.5, 1197, 1197.1, and 1198.

66. Therefore, Plaintiff seeks, on behalf of herself and all others similarly situated, unpaid wages at the required legal rate, reimbursement of stage fees, liquidated damages, interest, attorneys' fees and costs, and all other costs and penalties allowed by law. Plaintiff further seeks injunctive relief to compel Defendant to recognize exotic dancers' employee status, to provide all payment guaranteed by law, and for this Court's continuing jurisdiction to enforce compliance.

## SECOND CAUSE OF ACTION

### Failure to Pay Overtime as Required by State Law

67. Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

68. At all times relevant to the Complaint, Wage Order Nos. 4, 5 and 10 have required the payment of an overtime premium for hours worked in excess of 8 hours in a workday, 40 hours in a workweek, or on the seventh day worked in a single workweek.

69. During the relevant time period, Plaintiff and the class members were employed by Defendant within California but were not paid overtime wages for overtime hours worked.

70. Defendant's failure to pay overtime wages violates, inter alia, California Labor Code §§ 510, 558, 1194, and 1198, and the above-referenced Wage Orders.

71. Plaintiff requests that Defendant be required to pay her, and all those similarly

situated, all overtime wages illegally withheld, penalties as provided under the California Labor Code including §§ 201-203, 510 and 1194.1(a) *et seq*., punitive/exemplary damages, and attorneys' fees and costs under California Labor Code § 218.5 and 1194(a).

**THIRD CAUSE OF ACTION**

**Failure to Provide Itemized Wage Statements in Violation of California Labor Code § 226 and IWC Wage Orders**

72. Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

73. California Labor Code § 226(a) requires: "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or

other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California."

74. Defendant has failed, and continues to fail, to provide timely, accurate itemized wage statements to Plaintiff and California Class members in accordance with California Labor Code § 226 and Wage Order Nos. 4, 5, and 10. The wage statements that Defendant has provided to its exotic dancers, including Plaintiff and the proposed California Class members, do not accurately reflect the actual hours worked and/or wages earned.

75. Defendant's failure to provide timely, accurate, itemized wage statements to Plaintiff and members of the proposed California Class in accordance with the California Labor Code and the California Wage Orders has been knowing and intentional. Accordingly, Defendant is liable for damages and penalties under California Labor Code § 226.

**FOURTH CAUSE OF ACTION**

**Waiting Time Penalties Under California Labor Code §§ 201, 202, and 203**

76. Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

77. California Labor Code § 201(a) requires an employer who discharges an employee to pay compensation due and owing to said employee upon discharge. California Labor Code § 202(a) requires an employer to pay compensation due and owing within seventy-two (72) hours of an employee's termination of employment by resignation. California Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under §§ 201 and 202, then the employer is liable for waiting time penalties in the form of continued compensation for up to thirty (30) work days.

78. Certain members of the proposed California Class are no longer employed by Defendant but have not been paid full compensation for all hours worked, as alleged above. They are entitled to unpaid compensation for all hours worked, and overtime, for which to date they have not received compensation, and any applicable overtime.

79. Defendant has failed and refused, and continues to willfully fail and refuse, to timely pay compensation and wages and compensation to Plaintiff and members of the proposed California Class whose employment with Defendant have terminated, as required by California Labor Code §§ 201 and 202. As a direct and proximate result, Defendant is liable to all such California Class members for up to thirty (30) days of waiting time penalties pursuant to California Labor Code § 203, together with interest thereon.

80. WHEREFORE, pursuant to Labor Code §§ 218, 218.5, and 218.6, Plaintiff and Class members are entitled to recover the full amount of their unpaid wages, continuation wages under § 203, interest thereon, reasonable attorneys' fees, and costs of suit.

## FIFTH CAUSE OF ACTION

**Failure To Pay all Wages Owed Every Pay Period Under California Labor Code § 204**

81. Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

82. During the relevant time period, Plaintiff and class members have been employees of Defendant covered by Labor Code § 204 but have been misclassified and not treated as employees.

83. Pursuant to Labor Code § 204, Plaintiff and class members were entitled to receive on regular paydays all wages earned for the pay period corresponding to the payday.

84. Defendant has failed to pay Plaintiff and class members all wages earned each pay period. On information and belief, at all times during the proposed class period, Defendant has maintained a policy or practice of not paying Plaintiff and class members overtime wages for all overtime hours worked.

85. As a result of Defendant's unlawful conduct, Plaintiff and class members have suffered damages in an amount, subject to proof, to the extent they were not paid all wages and/or compensation and/or penalties each pay period. The precise amounts of unpaid wages, compensation, and/or penalties are not presently known to Plaintiff but can be determined directly from Defendant's records or indirectly based on information from Defendant's records and/or information known by class members.

86. WHEREFORE, pursuant to Labor Code §§ 218, 218.5 and 218.6, Plaintiff and class members are entitled to recover the full amount of their unpaid wages, interest thereon, reasonable attorneys' fees and costs of suit.

**SIXTH CAUSE OF ACTION**

**Common Law Conversion**

87. Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

88. Defendant's failure to give class members gratuities from customers that were given and/or left for class members, as alleged above, constitutes common law conversion.

89. Defendant has assumed control and ownership over the above-referenced gratuities, and applied them to its own use.

90. Plaintiff and class members had a right of ownership and possession over the above-referenced gratuities.

91. Defendant's theft and retention of the above-referenced gratuities, without consent, have caused Plaintiff and class members significant financial harm.

92. In failing to pay said monies to Plaintiff and class members and retaining that money for its own use, Defendant has acted with malice, oppression, and/or conscious disregard for the statutory rights of Plaintiff and class members. Such wrongful and intentional acts, given the number of victims and the number of acts and previous claims and/or lawsuits relative to similar acts, justify awarding Plaintiff and class members punitive damages pursuant to California Civil Code § 3294 *et seq.* in an amount sufficient to deter future similar conduct by Defendant.

**SEVENTH CAUSE OF ACTION**

**Failure to Reimburse for Expenses in Violation of Cal. Labor Code §§ 450, 2802**

93. Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

94. Defendant's conduct, as alleged above, violates California Labor Code §§ 450, 2802, insofar as Defendant has misclassified Plaintiff and class members as

independent contractors, and has failed to reimburse them for expenses that they paid that should have been paid by their employer.

**EIGHTH CAUSE OF ACTION**

**Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.***

95. Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

96. Plaintiff brings this claim on behalf of themselves and all others similarly situated in her representative capacity as a private attorney general against Defendant and Does 1 through 200 for their unlawful business acts and/or practices pursuant to the UCL, which prohibits all unlawful business acts/or practices.

97. Plaintiff asserts these claims as representatives of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have been exposed to Defendant's unlawful acts and/or practices and are owed wages that the Defendant should be required to pay or reimburse under the restitutionary remedy provided by the UCL.

98. As set forth herein, Defendant is engaging in numerous illegal business practices that constitute unlawful and/or unfair and/or fraudulent business acts and/or practices within the meaning of the UCL, including but not limited to imposing sham, non-negotiable "independent contractor" agreements on exotic dancers to avoid its legal obligation to provide basic employee rights, failing to give exotic dancers gratuities from customers that were given and/or left for exotic dancers, as alleged above, in violation of California Labor Code § 351, failing to pay for all hours worked including minimum wage and overtime, failing to pay all wages when they were due and upon termination, failing to provide accurate and itemized wage statements, and failing to reimburse business expenses.

99. Defendant's conduct constitutes one or more unfair business practices as defined in the UCL. Defendant's conduct was and is unfair within the meaning of the UCL because it is unlawful, causes significant harm to Plaintiff and similarly situated individuals, and is in no way counterbalanced by any legitimate utility to Defendant. In addition, the conduct offends established legislatively declared public policy and has been immoral,

unethical, oppressive, and unscrupulous. Plaintiff and the Class members have been injured by Defendant's illegal activities, which have deprived them of their rights as employees, including wages. They have suffered injury in fact, losing money and property, including without limitation in the form of unpaid wages, in the form of misappropriated gratuities, and in the form of money spent on business expenses that should have been borne by the employer. Plaintiff and Class members are entitled to restitution of monies due, disgorgement of the ill-gotten gains of Defendant, declaratory relief, a preliminary and permanent injunction enjoining Defendant from continuing the unlawful and unfair practices described herein, and to such other equitable relief as is appropriate under the UCL, including the fees, costs, and expenses incurred in vindicating their rights and the public interest generally, pursuant to California Business and Professions Code § 17203, California Code of Civil Procedure §1021.1, and any other applicable law.

## NINTH CAUSE OF ACTION

100. Plaintiff incorporates by reference the above listed paragraphs as if fully set forth herein.

101. To enforce California law, Plaintiff prosecutes this cause of action under the Labor Code Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq.* ("PAGA"), on behalf of herself and others currently and formerly employed by Defendant as exotic dancers, to recover civil penalties for Defendant's violations of law, pursuant to the procedures in Labor Code § 2699.3.

102. "The purpose of the PAGA is . . . to create a means of "deputizing" citizens as private attorneys general to enforce the Labor Code." *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489, 501 (2011).

103. PAGA provides: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and

other current or former employees pursuant to the procedures specified in Section 2699.3." California Labor Code § 2699(a).

104. PAGA also provides: "For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: (1) If, at the time of the alleged violation, the person does not employ one or more employees, the civil penalty is five hundred dollars ($500). (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." California Labor Code § 2699(f)(1)-(2).

105. "Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.' *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 380 (2014) (quoting Cal. Lab. Code § 2699, subd. (i)). "[A]n aggrieved employee acting as the LWDA's proxy or agent by bringing a PAGA action may likewise recover underpaid wages as a civil penalty under section 558." *Thurman v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1148 (2012). "[T]he language of section 558, subdivision (a) . . . provid[es] a civil penalty that consists of both the $50 or $100 penalty amount and any underpaid wages, with the underpaid wages going entirely to the affected employee or employees as an express exception to the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees (§ 2699, subd. (i))." *Id.* at 1145.

106. PAGA also provides: "Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." California Labor Code § 2699(g)(1).

107. Plaintiff brings this action under PAGA individually and as a representative suit on behalf of all current and former employees pursuant to the procedures in California Labor Code § 2699.3 or in the alternative as a class action as alleged above.

**COMPLIANCE WITH NOTICE AND EXHAUSTION REQUIREMENTS**

108. Plaintiff incorporates by reference the above listed paragraphs as if fully set forth herein.

109. Plaintiff Jane Roe notified the LWDA and Defendants about violations of law by letter sent by certified mail to Defendants on December 11, 2017, and filed with the LWDA on that same date, which included a document setting forth substantially the same allegations that are set forth in this amended complaint, which was mailed to Defendants at the following addresses: Jose Torres L.D. Latin Club Bar, Inc., c/o Luis Torres, 23238 Quail Drive, Twaine Harte, CA 95833, and Debbie Torres, Hanky Panky Club, 2651 El Camino Real, Redwood City, CA 94061. Plaintiff waited for the required sixty (60) day period to elapse before filing this amended complaint that adds the PAGA cause of action.

**PRIVATE ATTORNEY GENERAL ALLEGATIONS**

110. Plaintiff incorporates by reference the above listed paragraphs as if fully set forth herein.

111. As alleged herein and above, Defendant has violated several provisions of the California Labor Code for which Plaintiff is seeking recovery of civil penalties, including but not limited to Labor Code §§ 201, 202, 204, 210, 223, 226, 226.3, 226.8, 245-249, 351, 353, 432.5, 450, 510, 558, 1174, 1194, 1194.2, 1194.5, 1197, 1197.1, 1198, 1199, 2753, 2802, 3700, 3700.5, 3712, 3715, and Wage Order Nos. 4, 5, and/or 10.

**CALIFORNIA LABOR CODE VIOLATIONS**

**Willful Misclassification in Violation of Labor Code § 226.8**

112. Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

113. California Labor Code 226.8(a) provides: "It is unlawful for any person or employer to engage in any of the following activities: (1) Willful misclassification of an individual as an independent contractor. (2) Charging an individual who has been willfully misclassified as an independent contractor a fee, or making any deductions from compensation, for any purpose, including for goods, materials, space rental, services,

government licenses, repairs, equipment maintenance, or fines arising from the individual's employment where any of the acts described in this paragraph would have violated the law if the individual had not been misclassified."

114. California Labor Code 226.8(b) provides that if the "court issues a determination that a person or employer has engaged in any of the enumerated violations of subdivision (a), the person or employer shall be subject to a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation, in addition to any other penalties or fines permitted by law."

115. California Labor Code 226.8(c) provides that if the "court issues a determination that a person or employer has engaged in any of the enumerated violations of subdivision (a) and the person or employer has engaged in or is engaging in a pattern or practice of these violations, the person or employer shall be subject to a civil penalty of not less than ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for each violation, in addition to any other penalties or fines permitted by law."

116. The California Court of Appeal has stated: "Nothing in our analysis precludes plaintiffs from pursuing enforcement of section 226.8 through their PAGA claim." *Noe v. Superior Court*, 237 Cal. App. 4th 316, 341 n.15 (2015).

117. Defendant has violated California Labor Code § 226.8 through its conduct described herein, and therefore Plaintiff seeks recovery of the penalties specified herein.

**Failure to Pay Minimum Wages as Required by State Law**

118. Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

119. California Labor Code § 1197.1(a) provides: "Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an order of the commission shall be subject to a civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203 as follows: (1) For any initial violation that is intentionally committed, one hundred dollars

($100) for each underpaid employee for each pay period for which the employee is underpaid. This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203. (2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed. This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203. (3) Wages, liquidated damages, and any applicable penalties imposed pursuant to Section 203, recovered pursuant to this section shall be paid to the affected employee."

120. California Labor Code § 558 provides, in relevant part: "(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee. . . . (c) The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

121. The California Court of Appeal has held: "We disagree that section 558 provides for a civil penalty of $50 or $100 only, and that it clearly excludes underpaid wages from the civil penalty. In our view, the language of section 558, subdivision (a), is more reasonably construed as providing a civil penalty that consists of both the $50 or $100 penalty amount and any underpaid wages, with the underpaid wages going entirely to the affected employee or employees as an express exception to the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the Labor and Workforce

Development Agency (LWDA) and 25 percent to the aggrieved employees (§ 2699, subd. (i))." *Thurman v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1145 (2012).

122. At all relevant times, Defendant has willfully failed to pay Plaintiff and other exotic dancers any wages whatsoever.

123. At all relevant times, Defendant has been required to pay the exotic dancers minimum wages under California law, including without limitation pursuant to IWC Wage Order Nos. 4, 5, and/or 10, but has not done so.

124. "[T]he Legislature . . . authorized the LWDA to recover underpaid wages on behalf employees in the form of a civil penalty under section 558. Accordingly, an aggrieved employee acting as the LWDA's proxy or agent by bringing a PAGA action may likewise recover underpaid wages as a civil penalty under section 558." *Thurman v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1148 (2012).

125. Based on the violations set forth herein, on behalf of themselves and the other current and former employees, Plaintiff seeks recovery pursuant to Labor Code § 558 of either fifty dollars ($50) or one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid, to be distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees.

126. Based on the violations set forth herein, on behalf of themselves and the other current and former employees, Plaintiff also seeks recovery pursuant to Labor Code § 1197.1(a) of either one hundred dollars ($100) or two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid, to be distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees.

127. In addition, on behalf of themselves and the other current and former employees, Plaintiff seeks recovery of the underpaid wages going entirely to the affected employees, as a civil penalty pursuant to Labor Code § 558.

128. PAGA also allows for recovery with respect to Labor Code § 1194 for "any employee receiving less than the legal minimum wage or the legal overtime compensation

applicable to the employee." *See* Labor Code § 2699.5 (listing, *inter alia*, § 1194). Therefore, because of Defendant's failure to pay the legal minimum wage as required by state law, as alleged herein, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

129. PAGA also allows for recovery with respect to Labor Code § 1198 which provides, in relevant part: "The employment of any employee . . . under conditions of labor prohibited by the order [of the IWC] is unlawful." *See* Labor Code § 2699.5 (listing, *inter alia*, § 1198). Therefore, because of Defendant's violations of one or more IWC wage orders, as alleged herein, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Failure to Pay Overtime as Required by State Law**

130. Plaintiff incorporates by reference all paragraphs in this complaint as if fully set forth herein.

131. At all relevant times, Defendant has willfully failed to treat the exotic dancers as employees and has not paid them overtime wages for overtime hours worked.

132. At all relevant times, Defendant has been required to pay the exotic dancers an overtime premium for hours worked in excess of eight (8) hours in a workday, forty (40) hours in a workweek, or on the seventh consecutive day of work in a workweek pursuant to IWC Wage Order Nos. 4, 5, and/or 10, but have not done so.

133. Based on the violations set forth herein, on behalf of themselves and the other current and former employees, Plaintiff seeks recovery pursuant to Labor Code § 558 of either fifty dollars ($50) or one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid, to be distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees.

134. Based on the violations set forth herein, on behalf of themselves and the other current and former employees, Plaintiff also seeks recovery pursuant to Labor Code § 1197.1(a) of either one hundred dollars ($100) or two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid, to be

distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees.

135. In addition, on behalf of themselves and the other current and former employees, Plaintiff seeks recovery of the underpaid wages going entirely to the affected employees, as a civil penalty pursuant to Labor Code § 558.

136. PAGA also allows for recovery with respect to Labor Code § 1194 for "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee." *See* Labor Code § 2699.5 (listing, *inter alia*, § 1194). Therefore, because of Defendant's failure to pay overtime as required by state law, as alleged herein, to the extent that § 1194's provision for recovery of "the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon" constitutes "civil penalties" recoverable under Labor Code § 2699(a) or "underpaid wages" recoverable as a civil penalty (*cf. Thurman v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1148 (2012)), Defendant is liable for such civil penalties, or in the alternative, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

137. PAGA also allows for recovery with respect to Labor Code § 1198 which provides, in relevant part: "The employment of any employee . . . under conditions of labor prohibited by the order [of the IWC] is unlawful." *See* Labor Code § 2699.5 (listing, *inter alia*, § 1198). Therefore, because of Defendant's violations of one or more IWC wage orders, as alleged herein, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Failure to Provide Itemized Wage Statements in Violation of Labor Code § 226 and IWC Wage Orders**

138. Plaintiff incorporates by reference all paragraphs in this complaint as if fully set forth herein.

139. The California Court of Appeal has held: "For employers who violate section 226(a), civil penalties are assessed as provided in section 226.3." *Heritage Residential Care,*

*Inc. v. Division of Labor Standards Enforcement*, 192 Cal. App. 4th 75, 81 (2011).

140. California Labor Code § 226.3 provides: "Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226. . . . In enforcing this section, the Labor Commissioner shall take into consideration whether the violation was inadvertent, and in his or her discretion, may decide not to penalize an employer for a first violation when that violation was due to a clerical error or inadvertent mistake."

141. Defendant's failure to provide timely, accurate, itemized wage statements to Plaintiff and the other current and former employees in accordance with the California Labor Code and the Wage Orders has been knowing and intentional.

142. Based on the violations set forth herein, Defendant is liable for civil penalties pursuant to Labor Code § 226.3.

143. PAGA also allows for recovery with respect to Labor Code § 1198 which provides, in relevant part: "The employment of any employee . . . under conditions of labor prohibited by the order [of the IWC] is unlawful." *See* Labor Code § 2699.5 (listing, *inter alia*, § 1198). Therefore, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period

**Violations of Labor Code §§ 201, 202, and 203 ("Waiting Time")**

144. Plaintiff incorporates by reference all paragraphs in this complaint as if fully set forth herein.

145. California Labor Code 203(a) provides, in relevant part: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more

than 30 days."

146. Plaintiff and certain of the other aggrieved individuals were not paid full compensation, including overtime, for all hours worked, as alleged above, and were not paid that compensation that was due and owing upon discharge and/or within seventy-two (72) hours of the employee's termination of employment by resignation. Thus, Defendant has failed and refused, and continues to willfully fail and refuse, to timely pay compensation and wages and compensation in violation of California Labor Code §§ 201, 202, and 203.

147. Because of Defendant's violations of California Labor Code § 201, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

148. Because of Defendant's violations of California Labor Code § 202, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

149. Because of Defendant's violations of California Labor Code § 203, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Failure To Pay All Wages Owed Every Pay Period In Violation of Labor Code § 204**

150. Plaintiff incorporates by reference all paragraphs in this complaint as if fully set forth herein.

151. During the relevant time period, Plaintiff and other current and former aggrieved employees have been employees covered by Labor Code § 204 but have been misclassified and not treated as employees.

152. Pursuant to Labor Code § 204, Plaintiff and other current and former aggrieved employees were entitled to receive on regular paydays all wages earned for the pay period corresponding to the payday.

153. During the relevant time period, Defendant has failed to pay Plaintiff and the other current and former employees all wages earned each pay period. That violates Labor Code § 204.

154. During the relevant time period, Defendant has maintained a policy and/or practice of not paying Plaintiff and other current and former aggrieved employees overtime wages for all overtime hours worked. That violates Labor Code § 204.

155. Because of Defendant's violations of Labor Code § 204, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period, and under Labor Code § 210 for each aggrieved employee per pay period.

**Tip Splitting in Violation of Labor Code § 351**

156. Plaintiff incorporates by reference all paragraphs in this complaint as if fully set forth herein.

157. Defendant's tip splitting practices violate California Labor Code § 351.

158. Defendant's failure to keep records of all gratuities received violates California Labor Code § 353.

159. Because of Defendant's violations of Labor Code §§ 351 and 353, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Failure to Reimburse for Expenses in Violation of Labor Code §§ 450 and 2802**

160. Plaintiff incorporates by reference all paragraphs in this complaint as if fully set forth herein.

161. Defendant's conduct, as alleged above, violates California Labor Code §§ 450 and 2802, insofar as Defendant has misclassified Plaintiff and class members as independent contractors, and has failed to reimburse them for expenses that they paid that should have been paid by their employer.

162. Because of Defendant's violations of Labor Code §§ 450 and 2802, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Compelling Illegal Purported Agreements in Violation of Labor Code § 432.5**

163. Plaintiff incorporates by reference all paragraphs in this complaint as if fully set forth herein.

164.    Defendant's conduct, as alleged above, violates California Labor Code § 432.5, insofar as Defendant has required exotic dancers to enter into written purported agreements that contain numerous illegal provisions.

165.    Because of Defendant's violations of Labor Code § 432.5, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Violations of Paid Sick Day Requirements, Labor Code §§ 245-249**

166.    Plaintiff incorporates by reference all paragraphs in this complaint as if fully set forth herein.

167.    Defendant violated Labor Code § 246 by not having policies and procedures for exotic dancers to accrue and take paid sick days.

168.    Because of Defendant's violations of the paid sick day requirements, Defendant is liable for civil penalties under California Labor Code § 248.5 in an amount equal to "the dollar amount of paid sick days withheld from the employee multiplied by three; or two hundred fifty dollars ($250), whichever amount is greater . . . ."

169.    Because of Defendant's violations of the paid sick day requirements under California law, Defendant is also liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

170.    Because of Defendant's violations of the paid sick day requirements, Defendant is also liable for civil penalties pursuant to California Labor Code § 558 as follows: "(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.  (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.  (3) Wages recovered pursuant to this section shall be paid to the affected employee. . . . (c) The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

**Failure to Secure Compensation in Violation of Labor Code § 3700 *et seq.***

171. Plaintiff incorporates by reference all paragraphs in this complaint as if fully set forth herein.

172. Defendant did not secure workers' compensation for exotic dancers, in violation of Labor Code §§ 3700, 3700.5, 3712, 3715.

173. Because of Defendant's violations of the above-referenced statutes, Defendant is subject to the penalties and fines per Labor Code § 3700.5 and is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Failure to Maintain Payroll Records in Violation of Labor Code § 1174**

174. Plaintiff incorporates by reference all paragraphs in this complaint as if fully set forth herein.

175. California Labor Code § 1174(d) requires: "Every person employing labor in this state shall: . . . "Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years."

176. Defendant's conduct described herein constitutes a willful failure to maintain accurate and complete payroll records in violation of California Labor Code § 1174(d). Accordingly, Defendant is liable for civil penalties under California Labor Code § 1174.5, which provides: "Any person employing labor who willfully fails to maintain . . . accurate and complete records required by subdivision (d) of Section 1174 . . . shall be subject to a civil penalty of five hundred dollars ($500)."

177. WHEREFORE, for all of the violations specified in this cause of action, Plaintiff seeks civil penalties, attorneys' fees, costs of suit, and any further relief that the Court deems appropriate.

**TENTH CAUSE OF ACTION**

**Violations of the Fair Labor Standards Act**

178. Plaintiff incorporates by reference the above listed paragraphs as if fully set forth herein.

179. This particular claim presents a collective cause of action under the Fair Labor Standards Act by Plaintiff as well as any similarly situated individuals who "opt in" to this action under 29 U.S.C. § 216.

180. The Fair Labor Standards Act provides that a private civil action may be brought for the non-payment of federal minimum wages and for an equal amount in liquidated damages in any court of competent jurisdiction by any employee on behalf of himself or herself and others employees similarly situated pursuant to 29 U.S.C. § 216(b). Moreover, Plaintiff may recover attorneys' fees incurred pursuant to 29 U.S.C. § 216(b). Courts further have the authority to fashion injunctive relief pursuant to 29 U.S.C. § 217.

181. As set forth above, Defendant avoids its legal obligation to provide its exotic dancers basic employee rights such as wages and workers compensation by employing them under sham "independent contractor" agreements.

182. Defendant's control over its exotic dancers is sufficient to render all of them employees. Defendant uses sham "independent contractor" agreements to avoid its duties to pay wages. Further, as described above, Defendant actually has used its sham "independent contractor" agreements to require exotic dancers to pay to work.

183. Therefore, Plaintiff seeks, on behalf of herself and all others who "opt in" to this cause of action under 29 U.S.C. § 216, unpaid wages, including minimum wages and overtime wages, reimbursement of stage fees, liquidated damages, interest, attorneys' fees and costs, and all other costs and penalties allowed by law. Plaintiff further seeks injunctive relief to compel Defendant to recognize exotic dancers' employee status, to provide all wages guaranteed by law, and for this Court's continuing jurisdiction to enforce compliance.

**ELEVENTH CAUSE OF ACTION**

**Failure to Pay the Minimum Wage for All Hours Worked in Violation of the Redwood City Minimum Wage Ordinance**

184. Plaintiff incorporates by reference the above listed paragraphs as if fully set

forth herein.

185. During the class period, Defendant has employed Plaintiff and the class members, but has willfully failed to treat them as employees or pay them any wages whatsoever.

186. Pursuant to Redwood City Ordinance 2443, Plaintiff and the proposed California Class are entitled to recover in a civil action the unpaid balance of the full amount of straight time owed to them, plus liquidated damages, plus reasonable attorneys' fees and costs.

187. Plaintiff further seeks injunctive relief to compel Defendant to recognize exotic dancers' employee status, to provide all wages guaranteed by law, and for this Court's continuing jurisdiction to enforce compliance.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and as a representative on behalf of all current and former employees prays for relief against Defendant as follows:

a) For an order certifying that the First through Eighth and Eleventh Causes of Action of this Complaint may be maintained as a class action pursuant to Code of Civil Procedure section 382 on behalf of the classes as defined herein and that notice of the pendency of this action be provided to members of the proposed classes;

b) For an order certifying that the Tenth Cause of Action of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and requiring that Defendant identify all members of the FLSA Collection and provide all locating information for members of the FLSA Collection, and that notice be provided to all members of the FLSA Collection apprising them of the pendency of this action and the opportunity to file Consents to Become Party Plaintiff thereto;

c) For an order designating Plaintiff as class representative for the FLSA collection and the California Class, and Plaintiff's attorneys as counsel for the proposed classes;

d) For an order awarding Plaintiff, the FLSA collection, and the proposed classes

compensatory damages and statutory damages (including liquidated damages on the FLSA claim), including unpaid wages, overtime compensation, liquidated damages, penalties, and all other sums of money owed, together with interest on these amounts;

e) For preliminary, permanent, and mandatory injunctive relief prohibiting Defendant and its officers and agents from committing the violations of law herein alleged in the future;

f) For a declaratory judgment that Defendant has violated the FLSA, California labor law, PAGA, the Redwood City Minimum Wage Ordinance, and public policy as alleged herein;

g) For an order imposing all statutory and/or civil penalties provided by law, including without limitation penalties under the California Labor Code, PAGA, and the Redwood City Minimum Wage Ordinance;

h) For exemplary and punitive damages, as appropriate and available under each cause of action, pursuant to California Civil Code § 3294;

i) For all unpaid overtime wages due to Plaintiff and each class member;

j) For an order enjoining Defendant from further unfair and unlawful business practices in violation of the UCL;

k) Disgorgement of profits;

l) For an order awarding restitution of the unpaid regular, overtime, and premium wages due to Plaintiff and class members;

m) For pre- and post-judgment interest;

n) For an award of reasonable attorneys' fees and costs as provided by the FLSA, California Labor Code §§ 226(e), 1194, § 2699(g)(1), California Code of Civil Procedure § 1021.5, PAGA, the Redwood City Minimum Wage Ordinance, and/or other applicable law;

o) For all costs of suit; and

p) For such other and further relief as the Court deems just and proper.

DATED: ~~August ___, 2019~~ September 10, 2019

Respectfully submitted,

THE TIDRICK LAW FIRM LLP

By: ______________________________

STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662

Attorneys for Individual and Representative Plaintiff JANE ROE

**JURY DEMAND**

Plaintiff in the above-referenced action, on her own behalf and on behalf of all persons she seeks to represent, hereby demands a trial by jury on all counts.

DATED: ~~August ___, 2019~~ September 10, 2019

Respectfully submitted,

THE TIDRICK LAW FIRM LLP

By: ______________________________

STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662

Attorneys for Individual and Representative Plaintiff JANE ROE

40

SECOND AMENDED COMPLAINT

*Roe v. Jose Torres L.D. Latin Club Bar, Inc., et al.*, Civil Case No. 17CIV05530

# Exhibit A

**CONSENT TO BECOME PARTY PLAINTIFF**

I currently or formerly work or have worked for JOSE TORRES L.D. LATIN CLUB BAR, INC., LUIS TORRES, and/or HANKY PANKY CLUB (collectively, "Defendant") as a dancer. I hereby consent to be a party plaintiff in a Fair Labor Standards Act action against Defendant regarding Defendant's failure to fully compensate me for all compensable work time. I hereby authorize The Tidrick Law Firm LLP to represent me before any court or agency on such claims, and I hereby further authorize such counsel to make such further decisions with respect to the conduct and handling of this action, including the settlement thereof, as they deem appropriate or necessary.

Date: Aug 26, 2019 By: Jane doe (Aug 26, 2019)

JANE ROE

THE TIDRICK LAW FIRM LLP
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 788-5100
Facsimile: (510) 291-3226
E-mail: sgt@tidricklaw.com
E-mail: jby@tidricklaw.com

FILED
SAN MATEO COUNTY
SEP 23 2019
Clerk of the Superior Court
By [signature] DEPUTY CLERK

Attorneys for Individual and Representative Plaintiff JANE ROE

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

UNLIMITED JURISDICTION

JANE ROE, on behalf of herself and all others similarly situated,

Plaintiff,

v.

JOSE TORRES L.D. LATIN CLUB BAR, INC.; HANKY PANKY CLUB; and DOES 1-200,

Defendants.

Civil Case No. 17CIV05530

**PROOF OF SERVICE**

| ATTORNEY(S) NAME & ADDRESS:<br>THE TIDRICK LAW FIRM (510) 788-5100<br>Steven G. Tidrick, Esq. (SBN 224760)<br>Joel B. Young, Esq. (SBN 236662)<br>1300 Clay Street, Suite 600<br>Oakland, California 94612<br>Attorney(s) for:<br>Reference: #1768151SI | COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>COUNTY OF SAN MATEO – UNLIMITED JURISDICTION | |
| SHORT TITLE OF CASE:<br>Jane Roe, etc. v. Jose Torres L.D. Latin Club Bar, Inc.; et al. | |
| PROOF OF SERVICE BY MAIL (FIRST CLASS) | CASE NUMBER:<br>17CIV05530 |

1. **I am over the age of 18, not a party to this cause and a resident of or am employed in the county where the mailing occurred.**

2. **My residence or business address is *(specify)*:**
   1000 Broadway, Suite 340
   Oakland, California 94607

3. **I served a copy of the following documents *(specify exact title(s))*:**
   SECOND AMENDED COMPLAINT

4. **I served a copy of the foregoing document(s) by mailing it in a sealed envelope with prepaid postage as follows:**
   a. (x) **I deposited the envelope with the United States Postal Service**
   b. (x) **Deposited or placed (1) on *(date)*:** 09/19/2019 ***(city, state)*:** Oakland, California
   c. (x) **Name and address as shown on the envelope *(specify)*:**
   Mark I. Schickman, Esq.
   Cathleen S. Yonahara, Esq.
   FREELAND COOPER & FOREMAN LLP
   150 Spear Street, Suite 1800
   San Francisco, California 94105

5. **Person serving:**
   Seng Saelee
   Ace Attorney Service, Inc.
   1000 Broadway, Suite 340
   Oakland, California 94607
   (510) 465-1000

   **Fee for services: $**

   **(1) Registration No.:** N/A

   **(2) County:** N/A

6. **I declare under penalty under the laws of the State of California that the foregoing is true and correct.**

**Date:** September 20, 2019

SIGNATURE