UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JANE ROE,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSE TORRES L.D. LATIN CLUB BAR, INC,<br><br>    Defendant. | Case No. 19-cv-06088-LB<br><br>**PRELIMINARY APPROVAL ORDER**<br><br>Re: ECF No. 17 |

## INTRODUCTION

This is a wage-and-hour and employee-misclassification case. It is a putative collective action under the Federal Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.*, and a putative class action under Federal Rule of Civil Procedure 23.[1] The plaintiffs, current and former exotic dancers, claim that their employer, defendant Jose Torres L.D. Latin Club Bar, Inc, d/b/a Hanky Panky Club, misclassified them as independent contractors under the FLSA and California law and so failed to pay them requisite compensation. The parties entered into a settlement agreement, and the plaintiffs moved for preliminary approval of the proposed settlement. The court grants the unopposed motion.

---

[1] Second Am. Compl. ("SAC"), Ex A to Notice of Removal – ECF No. 1-1 at 18−39 (¶¶ 63–187). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 19-cv-06088-LB

**STATEMENT**

**1. The Lawsuit**

On December 4, 2017, Plaintiff Jane Roe filed a class-action complaint in the San Mateo County Superior Court asserting wage-and-hour claims on behalf of herself and similarly situated individuals who, during the class period, worked for the defendant as exotic dancers.[2] On February 16, 2018, she filed an amended complaint adding a claim under California's Private Attorney General Act ("PAGA").[3] In December 2018, the parties settled the case after a mediation.[4] The state court denied preliminary approval of that settlement.[5] The plaintiff filed a second amended complaint ("SAC") — which is the operative complaint — in September 2019 that added claims under the Redwood City Minimum Wage Ordinance and the FLSA.[6] The complaint has 11 claims: (1) failure to pay minimum wages, in violation of the California Labor Code; (2) failure to pay overtime wages, in violation of the Labor Code and state law; (3) failure provide itemized wage statements, in violation of the Labor Code; (4) failure to pay waiting-time penalties, in violation of the Labor Code; (5) failure to pay the wages owed every pay period, in violation of the Labor Code; (6) common-law conversion (based on a failure to pay gratuities from consumers); (7) failure to reimburse for expenses, in violation of the Labor Code; (8) a violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., based on unfair business practices; (9) a PAGA claim (predicated on Labor Code violations; (10) a violation of the FLSA; and (11) failing to pay the minimum wage required by the Redwood Ordinance.[7]

On September 25, 2019, the defendant removed the case to federal court.[8]

---

[2] Notice of Removal – ECF No. 1 at 1 (¶ 1).
[3] Mot. – ECF No. 17 at 4.
[4] Tidrick Decl. – ECF No. 17-1 at 5–6 (¶¶ 14–15).
[5] *Id.*; State Court Order, Ex. 6 to Tidrick Decl. – ECF No. 17-1 at 240–47.
[6] SAC, Ex A to Notice of Removal – ECF No. 1-1
[7] *Id.* at ECF No. 1-1 at 18–39 (¶¶ 63–187)
[8] Notice of Removal – ECF No. 1.

The parties engaged in discovery and ultimately settled the case pursuant to a settlement agreement that differs from the original settlement agreement in two respects.[9] First, the new settlement agreement requires the defendant to offer employment status to all individuals working for the defendant as exotic dancers now and in the future.[10] Second, the new settlement agreement provides that checks will be mailed automatically to all settlement class members who do not opt out, without any requirement to submit a claim form.[11]

The plaintiff filed her unopposed motion for preliminary approval of the settlement.[12] All parties have consented to magistrate-judge jurisdiction.[13]

The court held a hearing on May 14, 2020.[14]

## 2. Proposed Settlement

### 2.1   Settlement Class

There are approximately 90 class members.[15] The settlement agreement defines the class period, the proposed class, and the amounts available for distribution:

> (a) The "Class Period" for purposes of this Stipulation and settlement means the period from December 4, 2013, through date the Court enters an order granting preliminary approval of the Parties' settlement pursuant to the terms of this Stipulation.
>
> (b) The "Class" consists of all individual(s) who, during the Class Period, performed as exotic dancers at Jose Torres L.D. Latin Club Bar, Inc. d/b/a Hanky Panky Club ("the Nightclub") pursuant to an "independent contractor" agreement. A "Class Member" is a member of the Class. There are approximately ninety (90) Class Members.
>
> (c) "Settlement Class" means all Class Members who do not timely and properly excluded themselves from the terms of this Stipulation and settlement. A "Settlement Class Member" is a member of the Settlement Class.

---

[9] Mot. – ECF No. 17 at 5; Settlement Agreement – ECF No. 14.

[10] *Id.* at 11 (§ 15).

[11] *Id.* at 9 (§ 10(b)).

[12] Mot. – ECF No. 17.

[13] Consent Forms – ECF Nos. 5 & 6.

[14] Minute Entry – ECF No. 22.

[15] Settlement Agreement – ECF No. 14 at 4–5 (§ 5(b)).

(d) "Cash Pool Class" means all Settlement Class Members who sign, deposit, and/or cash a settlement check mailed pursuant to this settlement and who thereby consent to join as party plaintiffs in the claims asserted under the Federal Labor Standard Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA Claims") in this Litigation. A "Cash Pool Claimant" is a member of the Cash Pool Class.[16]

## 2.2 The Cash Pool

The settlement includes a $135,000 cash pool that the settlement administrator will distribute as follows:[17]

(i) Payments to the Settlement Class Members;

(ii) Plaintiff's attorney's fees and costs (as determined by the court);

(iii) $1,500 to the LWDA as payment for the PAGA claims;

(iv) A service award to the class representative of $10,000 (if approved by the court);

(v) Administrative costs of the settlement; and

(vi) Any cy pres payments.[18]

The total PAGA payment is $2,000, and 75 percent, or $1,500, will be paid to the LWDA as PAGA civil penalties, and 25 percent, or $500, will be distributed to Settlement Class members.[19]

The plaintiff's counsel will ask for fees of no more than 25 percent of the Gross Settlement Value and costs of no more than $5,000.[20]

The administration costs for the settlement are estimated at no more than $10,000.[21]

The allocation to the class members is as follows:

(a) Cash Payments shall be distributed to Settlement Class members *pro rata* based on the number of "Performance Months" (defined as any calendar month during the Class Period

---

[16] *Id.* (§ 5).

[17] The numbering matches the settlement agreement. *Id.* at 9 (¶¶ 10(a)).

[18] *Id.* at 5–6 (§ 6).

[19] *Id.* at 5 (§ 6). "[A]n aggrieved employee acting as the LWDA's proxy or agent by bringing a PAGA action may likewise recover underpaid wages as a civil penalty under section 558. *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal App. 4th 1112, 1148 (2012) Such underpaid wages "go[] entirely to the affected employee or employees as an express exception to the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the [LWDA] and 25 percent to the aggrieved employees (§ 2699, subd. (i))." *Id.* at 1145. The parties understand and agree that the defendant's payment of funds to the Cash Pool is the consideration for resolution of the PAGA claims premised on Labor Code § 558. Settlement Agreement – ECF No. 14 at 5–6 n.1.

[20] *Id.* at 6 (§ 7), 10 (§ 14(a)).

[21] *Id.* at 6–7 (§§ 8(a)(i), (vi)).

ORDER – No. 19-cv-06088-LB    4

in which a Class Member had at least one date of performance — i.e., a connected block of time that the Class Member was at the Nightclub to perform, regardless of the fact that the date extended over more than one calendar day) worked during the Class Period (which is, as noted, is the time period from December 4, 2013 through date the Court enters an order granting preliminary approval of the Parties' settlement pursuant to the terms of this Stipulation).

(b) Determination of Performance Months. Within fourteen (14) days after entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the number of Performance Months accrued by each Settlement Class member during the Class Period.[22]

The plaintiff's counsel estimates the Net Settlement Amount will be $74,750.[23] The plaintiff's counsel estimates that, including the $500 PAGA penalties, results in $836 per class member.[24]

Settlement checks will be mailed and will expire 120 days from the date of issuance by the Settlement Administrator.[25] The value of any expired checks will be paid to the *cy pres* recipient.[26]

**2.3    Changed Business Practices**

Each exotic dancer who continues to work for the defendant, and each person who applies to perform as an exotic dancer, will be offered employment status.[27] The defendant will offer current and prospective exotic dancers an hourly wage and one logo costume per month to wear while performing.[28]

**2.4    Release**

There are two sets of releases.

First, if a class member does not exclude herself (as described under the notice) and does not cash the mailed check, she will release the claims in the case but not the FLSA claims.[29]

---

[22] *Id.* at 9 (§ 9).

[23] Mot. – ECF No. 17 at 7.

[24] *Id.* The court's math does not add up precisely to this figure (as discussed at the hearing), and thus the court asks the parties to check the math in their submission at the final fairness hearing.

[25] Settlement Agreement – ECF No. 14 at 9 (§ 10(b)), 10 (§ 12).

[26] *Id.* at 10 (§ 13(b)).

[27] Settlement Agreement – ECF No. 14 at 11 (§ 15).

[28] *Id.*

[29] *Id.* at 3 (§§ 5(c)–(d)), 13–14 (§ 18(b)).

Second, if a class member cashes the check, she will release all claims, including the FLSA claim.[30]

The settlement agreement includes a general release for the named plaintiff.[31]

### 2.5 Administration

The settlement agreement has three acceptable proposed administrators: Rust Consulting, Inc., Settlement Services, Inc., and CPT Group, Inc.[32] Other administration procedures — including notice, administration, procedures for exclusion, and procedures for objections — are set forth in the settlement agreement.[33]

# ANALYSIS

## 1. Jurisdiction

The court has federal-question jurisdiction under 28 U.S.C. § 1331 for the FLSA claim and supplemental jurisdiction under 28 U.S.C. § 1367 for the state-law claims.[34]

## 2. Conditional Certification of Settlement Classes

The court determines whether the settlement classes meet the requirements for class certification first under Rule 23 and then under the FLSA.

### 2.1 Rule 23 Requirements

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton*

---

[30] *Id.* at 3 (§ 5(d), 14 (§ 18(c)).

[31] *Id.* at 14–15 (¶ 18(d)).

[32] Mot. – ECF No. 17 at 2 (¶ 4); Settlement Agreement – ECF No. 14 at 6 (§ 8(a)(i)).

[33] *Id.* at 8–9 (§§ 8(c)–(e)), 11–13 (§§ 16–17).

[34] Notice of Removal – ECF No. 1 at 1–2 (identifying federal-question jurisdiction as the basis for removal).

*v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Espinosa v. Ahearn (In re Hyundai and Kia Fuel Econ. Litig.)*, 926 F.3d 539, 557 (9th Cir. 2019) (en banc).

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable"; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *In re Hyundai and Kia*, 926 F.3d at 556. Also, the common questions of law or fact must predominate over any questions affecting only individual class members, and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The court finds preliminarily (and for settlement purposes only) that the Rule 23(a) factors — numerosity, commonality, typicality, and adequacy — support the certification of the class. It also finds preliminarily under Rule 23(b)(3) (and for settlement purposes only) that the common questions predominate over any questions affecting only individual members, and a class action is superior to other available methods.

First, there are approximately 90 class members.[35] The class is numerous. *See Nelson v. Avon Prods.*, No. 14-cv-02276-BLF, 2015 WL 1778326, at *5 (N.D. Cal. Apr. 17, 2015).

Second, there are questions of law and fact common to the class that predominate over any individual issues. The common questions are whether the defendant misclassified all exotic dancers as independent contractors during the class period, the defendants' uniform policies and practices regarding compensation. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Betorina v. Ranstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *4 (N.D. Cal. Apr. 6, 2017). These common questions predominate over any questions affecting only individual members.

---

[35] Tidrick Decl. – ECF No. 17-1 at 4 (¶ 10); Settlement Agreement – ECF No. 14 at 4–5 (§ 5(b)).

Third, the claims of the representative parties are typical of the claims of the class. The representative plaintiff and all class members allege wage-and-hours and FLSA violations based on similar facts. All representatives possess the same interest and suffer from the same injury. *Cf. Betorina*, 2017 WL 1278758, at *4.

Fourth, the representative plaintiff fairly and adequately protects the interests of the class. The factors relevant to a determination of adequacy are (1) the absence of potential conflict between the named plaintiff and the class members, and (2) counsel chosen by the representative party who is qualified, experienced, and able to vigorously conduct the litigation. *In re Hyundai and Kia*, 926 F.3d at 566 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). The court is satisfied that the factors exist here: the named plaintiff has shared claims and interests with the class (and no conflicts of interest), and has retained qualified and competent counsel who have prosecuted the case vigorously. *Cf. id.*; *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

Finally, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

In sum, the prerequisites of Fed. R. Civ. P. 23(a) and (b)(3) are met. The court conditionally certifies the class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only and for the purpose of giving the class notice of the settlement and conducting a final approval hearing.

### 2.2  FLSA Class

The FLSA authorizes opt-in representative actions where the complaining parties are "similarly situated" to other employees. 29 U.S.C. § 216(b); *see generally Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1042 (2016). The class representative worked as an exotic dancer during the class period, and her wage-and-hour claims — and related issues such as her employment status — present common fact and law questions. The court preliminarily authorizes the FLSA collective for settlement purposes only.

### 3. Preliminary Approval of Settlement

The approval of a class-action settlement has two stages: (1) the preliminary approval, which authorizes notice to the class; and (2) a final fairness hearing, where the court determines whether the parties should be allowed to settle the class action on the agreed-upon terms.

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *In re Hyundai and Kia*, 926 F.3d at 556 (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). A court may approve a proposed class-action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: "[(1)] the strength of the plaintiff's case; [(2)] the risk, expense, complexity, and likely duration of further litigation; [(3)] the risk of maintaining class-action status throughout trial; [(4)] the amount offered in settlement; [(5)] the extent of discovery completed and the stage of the proceeding; [(6)] the experience and views of counsel; [(7)] the presence of a government participant; and [(8)] the reaction of the class members to the proposed settlement." *Id.* at 1026 (citation omitted).

When parties "negotiate a settlement agreement before the class has been certified, "settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Roes, 1–2 v. SFBSC Management*, 944 F.3d 1035, 1043 (9th Cir. 2019) (quoting *Dennis v. Kellog*, 697 F.3d, 858, 864 (9th Cir. 2012)). "Specifically, 'such settlement agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Id.* at 1049 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011)).

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that preliminary approval is appropriate.

First, the settlement appears fair. The settlement agreement was the result of an adversarial, arms-length negotiation process that provides value commensurate to other wage-and-hour settlements on behalf of exotic dancers.[36] The settlement payout corresponds to each class members' tenure as an exotic dancer.[37]

Second, the value of the settlement is significant given the potential recovery and risk. The plaintiff's counsel calculates the potential maximum recovery in the case, a calculation that assumes that a jury will conclude that the defendant misclassified the class members as independent contractors.[38] This is not an assured outcome. *See Buel v. Chowder House, Inc.*, 2006 WL 1545860 (Cal. App. June 7, 2006) ("On appeal, Buel contends that the jury erred in finding her to be an independent contractor. We conclude that the jury verdict was supported by substantial evidence and affirm."). When viewed against the risk of no recovery, this settlement is fair.

Third, the value of the settlement is fair given the complexity, length, and expense of protracted litigation. When weighed against the potential delay and added expense to achieve the same or better outcome at trial, the settlement agreement is fair.

Fourth, a class action allows class members — who otherwise would not pursue their claims individually because costs would exceed recoveries — to obtain relief.

The recoveries here are adequate to justify preliminary approval. Given other comparable settlements and the litigation risks identified above, the settlement amount at least preliminarily appears fair.

For the same reasons, the court preliminarily approves the settlement of the FLSA collective action.

---

[36] Tidrick Decl. – ECF No. 17-1 at 4 (¶¶ 11–12); Recent Settlements, Exs. 3–5 to Tidrick Decl. – ECF No. 17-1 at 23–239.

[37] Settlement Agreement – ECF No. 14 at 9 (§ 9).

[38] Mot. – ECF No. 17 at 19–20.

The PAGA allocation is within the range of reasonable settlements.[39] *See, e.g.*, *Viceral v. Mistras Grp.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *8–9 (N.D. Cal. Oct. 11, 2016).

The court will address the issue of attorney's fees at the final fairness hearing. *See Hanlon*, 150 F.3d at 1029 (twenty-five percent is a benchmark in common fund cases); *cf. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (25 percent benchmark, though a starting point for analysis, may be inappropriate in some cases; fees must be supported by findings).

### 4. Appointment of Class Representative, Class Counsel, and Claims Administrator

The court provisionally appoints Jane Roe as the class representative and finds provisionally that she has claims that are typical of members of the class generally and that she is an adequate representative of the other members of the proposed classes.

The court provisionally appoints Steven G. Tidrick, Esq. and Joel Young, Esq. (of the Tidrick Law Firm LLP) as class counsel for settlement purposes only. *See* Fed. R. Civ. P. 23(a) & (g)(1). The court finds provisionally that they have sufficient qualifications, experience, and expertise in prosecuting class actions.

The court approves the proposed administrators. The administrator will administer the settlement in accordance with the requirements set forth in the settlement agreement.

### 5. Class Notice

The court approves the class notice and plan. The court finds that the class notice provides the best notice practicable, satisfies the notice requirements of Rule 23, adequately advises class members of their rights under the settlement agreement, and meets the requirements of due process. *Cf. In re Hyundai and Kia*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation marks omitted) (quoting *Rodriguez*, 563 F.3d at 962). The notice fairly, plainly, accurately, and reasonably provide class

---

[39] *Id.* at 23 (collecting cases).

members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the classes; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims should they remain class members; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date, time, and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[40]

### 6. Service Awards

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (citation omitted). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice . . . ." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). The Ninth Circuit also has emphasized that district courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

The court defers consideration of the awards until the final approval hearing.

---

[40] Settlement Notice, Ex. 1 to Tidrick Decl. – ECF No. 17-1 at 8−16.

## 7. *Cy Pres* Award

The *cy pres* distribution appears to account for and have a substantial nexus to the nature of the lawsuit, the objectives of the statutes, and the interests of the silent class members. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819–22 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038–41 (9th Cir. 2011). The value of any uncashed checks will be distributed to the Saint Francis Center of Redwood City, or if not approved by the court, The Justice and Diversity Center of the Bar Association of San Francisco (a public-interest-law non-profit organization).[41]

The court defers the consideration of any *cy pres* award to the final fairness hearing.

## 8. Compliance with Class Action Fairness Act

The plaintiffs will provide notice of the settlement — which is deemed filed as of the date of this order — and other information showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the appropriate federal and state officials. Any final settlement approval will be more than 90 days after service as required by 28 U.S.C. § 1715.[42]

## 9. Procedures for Final Approval Hearing

### 9.1    Deadlines[43]

| Event | Date |
|---|---|
| Defendant provides class list to administrator | 14 days after Preliminary Approval |
| Deadline for motion for service award | 14 days before the deadline for objections |
| Deadline for motion for attorney's fees and costs | 14 days before the deadline for objections |

---

[41] Settlement Agreement – ECF No. 14 at 10 (§ 13(b)).

[42] According to Newberg on Class Actions, "[t]he Class Action Fairness Act of 2005 (CAFA) added an additional component to settlement notice, namely that certain government officials—whether or not themselves class members — must receive notice of *any class action* settled in federal court." *Newberg on Class Actions*, § 8:18 (emphasis added). In other cases, the parties have sent the notice just to be cautious, which is why the court flags the issue. If the parties take a different view, then they may raise their preferred approach with the court.

[43] The deadlines are from the settlement agreement at ECF No. 14 and the proposed order at ECF No. 17-2.

| | |
|---|---|
| Deadline for objections | 60 days after notice is mailed |
| Deadline for opting out of the settlement | 60 days after notice is mailed |
| Deadline for plaintiff to file motion for final approval | 91 days after the Preliminary Approval |
| Final Approval Hearing | August 27, 2020, at 9:30 a.m. |

### 9.2  Objections and Exclusions

The processes are in the settlement agreement and in the class notice.

## CONCLUSION

The court (1) conditionally certifies the Settlement Class and the FLSA collective for settlement purposes only, (2) preliminarily approves the settlement and authorizes notice as set forth in this order, (3) approves the notice plan, (4) provisionally appoints the class representatives and class counsel, (5) approves CPT Group, Inc. as the claims administrator, (6) orders the procedures in this order (including all dates in the chart), and (7) orders the parties and the claims administrator to carry out their obligations in the settlement agreement.

This disposes of ECF No. 17.

**IT IS SO ORDERED.**

Dated: May 14, 2020

_____
LAUREL BEELER
United States Magistrate Judge