1   THE TIDRICK LAW FIRM LLP
    STEVEN G. TIDRICK, SBN 224760
2   JOEL B. YOUNG, SBN 236662
    1300 Clay Street, Suite 600
3   Oakland, California  94612
    Telephone:  (510) 788-5100
4   Facsimile:   (510) 291-3226
    E-mail:      sgt@tidricklaw.com
5   E-mail:      jby@tidricklaw.com

6   Attorneys for Individual and Representative
    Plaintiff JANE ROE

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10  JANE ROE, on behalf of herself and all others          Civil Case No. 3:19-cv-06088-LB
    similarly situated,
11                                                          **PLAINTIFF'S NOTICE OF MOTION
                          Plaintiff,                        AND MOTION FOR FINAL APPROVAL
12                                                          OF CLASS SETTLEMENT;
          v.                                                MEMORANDUM OF POINTS AND
13                                                          AUTHORITIES**
    JOSE TORRES L.D. LATIN CLUB BAR,
14  INC. *et al.*,                                          The Honorable Laurel Beeler

15                        Defendants.                       Date:        August 27, 2020
                                                            Time:        9:30 A.M.
16                                                          Courtroom:   Courtroom B, 15th Floor
                                                                         450 Golden Gate Avenue
17                                                                       San Francisco, California
                                                            Judge:       The Honorable Laurel Beeler
18

19

20

21

22

23

24

25

26

27

28

---

**NOTICE OF MOTION AND MOTION**

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

      NOTICE IS HEREBY GIVEN that on August 27, 2020, at 9:30 A.M. or as soon thereafter as the matter may be heard, before the Honorable Laurel Beeler, United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 15th Floor, Courtroom B, Plaintiff Jane Roe ("Plaintiff") will and hereby does move the Court, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and Rule 23(c) and (e) of the Federal Rules of Civil Procedure, for final approval of the Parties' class action settlement, filed March 19, 2020 ("Settlement Agreement") (Docket No. 14), and for entry of the proposed order filed herewith.

DATED: August 13, 2020         Respectfully submitted,

                               THE TIDRICK LAW FIRM LLP

                               By:    /s/ Steven G. Tidrick

                               _____
                               STEVEN G. TIDRICK, SBN 224760
                               JOEL B. YOUNG, SBN 236662

                               Attorneys for Plaintiff Jane Roe

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION AND SUMMARY**

      Plaintiff Jane Roe ("Plaintiff") seeks final approval of a proposed class settlement and certification of a class and collective action for settlement purposes. The parties reached settlement through arm's-length bargaining by experienced counsel. The settlement will result in significant financial benefit to class members. The applicable notice clearly apprised class members of their rights to object to or opt out of the settlement. There is no suggestion of anything other than good faith and fair dealing on all material issues related to the resolution of the action. Therefore, Plaintiff respectfully submits that the proposed settlement warrants final approval.

**II.    NATURE OF THE CASE AND PROCEDURAL HISTORY**

1
2
3
4
5
6
7

In the interests of efficiency, Plaintiff refers the Court to (1) Plaintiff's motion for preliminary approval of the settlement, which describes the case and its procedural history. *See* Docket No. 17 ("Plaintiff's Motion for Preliminary Approval"), at ECF pages 4:6-6:1.[1] That motion also summarizes the terms of the settlement agreement, *see* Plaintiff's Motion for Preliminary Approval, at ECF pages 6:18-10:1. The settlement agreement was filed March 19, 2020 ("Settlement Agreement") (Docket No. 14) The Court entered an order preliminarily approving the settlement on May 14, 2020. *See* ECF No. 23.

8

## III.   KEY FACTS SINCE PRELIMINARY APPROVAL

9
10

The following are key events that have transpired, and new information that is available, since the Court granted preliminary approval of the class settlement on May 14, 2020.

11

### A.  CAFA Notice Was Mailed to the Appropriate Federal and State Officials

12
13
14

Pursuant to the Court's order of preliminary approval, Plaintiff's counsel caused notice to be mailed on May 26, 2020 to the appropriate federal and state officials, specifically, the Attorney General of the United States and the Attorneys General of California, Texas, and Tennessee.

15

### B.  Notice Was Sent to the Settlement Class

16
17
18
19
20
21
22
23
24
25
26

Pursuant to the Court's order of preliminary approval, the Court-appointed settlement administrator, CPT Group, Inc., mailed the Court-approved class notice to the class members on June 4, 2020. *See* Declaration of Stephen Gomez of CPT Group Inc. with Respect to Settlement Administration ("Gomez Decl."), filed herewith, ¶ 8 & Ex. A. Consistent with the Court's order of preliminary approval, the class notice specified a deadline of August 3, 2020 for exclusions (opt-outs) and objections. *See id*. at Ex. A (Notice, page 6). Pursuant to the parties' stipulation and proposed order, the Court subsequently ordered additional text message notice to 26 settlement class members for whom Defendant lacked mailing addresses. *See* Stipulation and Order Regarding Additional Notice to Settlement Class Members (ECF No. 27). The Settlement Administrator provided notice consistent with the approved plan. *See* Gomez Decl., ¶¶ 8-12. Only one (1) Class Notice was ultimately deemed undeliverable. *Id*. ¶ 10.

27
28

---

[1]  In this brief, page references for ECF-filed documents refer to the page numbers at the tops of the pages generated by the ECF system, not to the page numbers at the bottoms of the pages.

### C. Plaintiff's Motion for Attorneys' Fees and Costs and Service Awards

Plaintiff filed her Motion for Award of Attorneys' Fees and Costs and Service Award on July 20, 2020 (ECF No. 28), which was fourteen (14) days before the deadline for objections.

### D. Positive Response by Settlement Class Members

The response of Settlement Class members has been positive. There have been no requests for exclusion or objections received or filed. *See* Gomez Decl. ¶¶ 13-14.

### E. The Projected Average Payment to Class Members Is $1,125.99

If the Court grants final approval to the $135,000 settlement and grants Plaintiff's motion for attorneys' fees ($33,750) and costs ($5,000) and service award ($10,000), and appoves the requested payment to the administrator ($9,250) and to the LWDA ($1,500), then the net settlement amount to be distributed to the class is $75,500, which is about sixty percent (60%) of the gross settlement amount. Divided among the 36 class members, the projected average payment to class members is $811.83, with payments ranging from $78.32 to $4,464.21. *See* Gomez Decl. ¶ 16.

## IV.   KEY TERMS OF THE CLASS SETTLEMENT

Plaintiff incorporates by reference the discussion of the key terms of the proposed settlement set forth in Plaintiff's Motion for Preliminary Approval. *See* ECF No. 17 at ECF pages 4:6-6:1. The settlement agreement was filed March 19, 2020 ("Settlement Agreement") (Docket No. 14) The Court entered an order preliminarily approving the settlement on May 14, 2020, which summarized the key terms. *See* ECF No. 23 at 3:11-6:8.

## V.   LEGAL STANDARDS FOR CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF CLASS SETTLEMENT

### A.   Class Claims Settled Under Rule 23

#### 1.   Criteria

Rule 23(e) of the Federal Rules of Civil Procedure provides that settlement of the claims of a certified class is subject to the court's approval. In the Ninth Circuit, settlement of class actions is generally favored as a matter of "strong judicial policy." *Alberto* v. *GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs* v. *City of Seattle,* 955 F.2d 1268, 1276

3

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMO. OF POINTS AND AUTHORITIES – *Roe v. Jose Torres L.D. Latin Club Bar, Inc. et al.*, Civil Case No. 3:19-cv-06088-LB

1   (9th Cir. 1992)).

2          That principle is subject to certain limitations when the parties to a class action agree to

3   settle before a class is certified. To ensure that the proposed class is appropriate and protect the

4   interests of absent members of the class, courts are required to "pay" undiluted, even heightened,

5   attention "to class certification requirements" and consider whether the proposed settlement

6   "taken as a whole" "is fundamentally fair, adequate, and reasonable." *Staton* v. *Boeing Co.,* 327

7   F.3d 938, 952 (9th Cir. 2003) (citing *Amchem Prods. Inc.* v. *Windsor,* 521 U.S. 591, 620, 117 S.

8   Ct. 2231 (1997) and quoting *Hanlon* v. *Chrysler Corp.,* 150 F.3d 1011, 1019, 1026 (9th Cir.

9   1998)). Thus, before it can approve the proposed settlement, the Court must determine whether

10  the class satisfies all four criteria of Federal Rule of Civil Procedure 23(a) and one prong of Rule

11  23(b). *Alberto*, 252 F.R.D. at 659. The Court must also determine whether the proposed

12  settlement terms are fair to the class as a whole, reasonable, and adequate. *Id.*

13              **2.    Procedure**

14         Procedurally, the reviewing court's evaluation is conducted in two stages. *Alberto,* 252

15  F.R.D. at 658. At the first stage, the court conditionally certifies a class for settlement purposes,

16  preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the

17  proposed class settlement to be given to the class. *Id.* (citations omitted). *See also* MANUAL FOR

18  COMPLEX LITIGATION (Fourth) § 21.632 (2004) ("MANUAL FOR COMPLEX LITIGATION")

19  (summarizing "preliminary fairness review"). In this case, the first stage has been completed.

20         Stage two is the fairness hearing, set for a time after notice has been provided to the class

21  and class members have had an opportunity to submit claims or objections to the proposed

22  settlement or to opt out. *Alberto,* 252 F.R.D. at 659 (citations omitted). At or after the fairness

23  hearing, taking into account the responses of class members and any additional information

24  gained, the court reaches a final determination about whether the proposed settlement should be

25  approved. *Id.*

26         **B.    Standards for Class Settlement of FLSA Claims**

27         Employee claims under the FLSA may not be settled without supervision of either the

28  Secretary of Labor or a district court. The proper procedure for obtaining court approval of the

1  settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon

2  which the district court may enter a stipulated judgment only after scrutinizing the settlement for

3  fairness. In reviewing the fairness of such a settlement, a court must determine whether the

4  settlement is a fair and reasonable resolution of a *bona fide* dispute. *See Lynn's Food Stores, Inc.*

5  *v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982); *McKeen-Chaplin v. Franklin Am.*

6  *Mortg. Co.*, 2012 U.S. Dist. LEXIS 179635, at *6 (N.D. Cal. Dec. 19, 2012). "If a settlement in

7  an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA

8  coverage or computation of back wages, that are actually in dispute[,] . . . the district court [may]

9  approve the settlement in order to promote the policy of encouraging settlement of litigation."

10  *Yue Zhou v. Wang's Rest.*, 2007 U.S. Dist. LEXIS 60683, at *2-4 (N.D. Cal. Aug. 8, 2007)

11  (citations omitted, brackets in original); *accord Stevens v. Safeway Inc.*, 2008 U.S. Dist. LEXIS

12  17119, at *12-13 (C.D. Cal. Feb. 25, 2008). The standard for approving a proposed settlement of

13  FLSA claims "is similar to that used in evaluating settlements under Rule 23(e)": "the district

14  court's role ... 'must be limited to the extent necessary to reach a reasoned judgment that the

15  agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

16  parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all

17  concerned." *Stevens*, 2008 U.S. Dist. LEXIS 17119, at *l3-14 (quoting *Officers for Justice v.*

18  *Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied,* 459 U.S. 1217, 103 S.Ct.

19  1219 (1983)).

20  **VI.    THE COURT SHOULD GRANT FINAL APPROVAL**

21          **A.    Conditional Certification of the Class for Settlement Purposes Is Warranted**

22          The Court conditionally certified the class in its order granting preliminary approval of the

23  settlement. *See* Preliminary Approval Order, at 14. For the same reasons set forth in Plaintiff's

24  motion for preliminary approval, Plaintiff requests that the Court enter the proposed order filed

25  herewith granting final approval of the settlement, including the certification of the Settlement

26  Class as a collective action under the FLSA and certification of the class action pursuant to Rule

27  23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* ECF No. 17.

28          **B.    The Proposed Settlement Is Fair, Reasonable, and Adequate**

5

**1.   The Court Already Granted Preliminary Approval**

The Court granted preliminary approval of the settlement on May 14, 2020 (ECF No. 23). At that stage, the question was whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating. *Molski v. Gleich,* 318 F.3d 937, 944 (9th Cir. 2003).  *See also* MANUAL FOR COMPLEX LITIGATION § 21.632. "Once the judge is satisfied as to the . . . results of the initial inquiry into the fairness, reasonableness and adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. *Id.,* § 21.633 at 321.

**2.   The Class Supports the Settlement**

The Court-approved notice was mailed to the class members regarding the terms of the settlement, the monetary relief, and their right to opt out or object to the settlement, and text messages were sent to individuals for whom mailing addresses were unavailable. As noted, none of the putative class members requested to be excluded. No class member filed an objection.

The lack of opt-outs and objections demonstrates a general acceptance of the Settlement by Class Members. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. Thus, the Court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Ching v. Siemens Indus.*, 2014 U.S. Dist. LEXIS 89002, at *18-19 (N.D. Cal. June 27, 2014) (citations and internal quotations omitted). *See also Corson v. Toyota Motor Sales U.S.A.*, 2016 U.S. Dist. LEXIS 46757, at *22-23 (C.D. Cal. Apr. 4, 2016) ("Here, KCC has received only one objection to the Settlement Agreement and 99 timely requests for exclusion. Given the small number of opt-outs and objections, the Court finds that this factor weighs in favor of final approval.") (citation omitted); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) ("Clearly, the number of objectors in this case fell well below the four percent of objectors paraded in *Petrovic*. The district court has a duty to the silent majority as well as the vocal minority. While we agree that these vocal objectors should also be considered, we do not believe

6

that disapproval of the settlement is warranted in this case.") (citations omitted) (citing *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999), *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995), *cert denied*, 517 U.S. 1156, 134 L. Ed. 2d 648, 116 S. Ct. 1544 (1996)). *See, e.g., Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (approving settlement where "only" 29 objections were made in a 281-member class); *Marshall v. NFL*, 787 F.3d 502, 513 (8th Cir. 2015) ("We have previously approved class-action settlements even when almost half the class objected to it."); *Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1226-27 (8th Cir. 1982) (finding no abuse of discretion even though both named plaintiffs objected to it and 790 of approximately 3,000 members objected); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (180 of 400 inmates objecting).

### 3.  All Other Relevant Factors Also Support Final Approval

Factors relevant to whether a proposed class settlement should be approved include: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). Another consideration is whether the settlement is "the product of collusion among the negotiating parties." *Id*. at 576.

The Strength of Plaintiff's Case

Plaintiff's counsel calculated that, if Plaintiff succeeded on the claims in the proposed third amended complaint at trial (and prevailed on any appeal), the maximum potential recovery in this case would be approximately $1,909,240 (one million, nine hundred nine thousand, two hundred forty dollars). However, the trier of fact could reasonably interpret information on earnings and performance hours as proving that instances of minimum wage violations, if any, were infrequent, and if the trier of fact found that evidence compelling, the potential recovery could be significantly less than $1.9 million, and very possibly on the order of approximately $100,000 to $200,000. It bears noting that a recovery even in that range

7

1    would be achieved only if the trier of fact found that Class Members were in fact misclassified

2    as independent contractors. In that light, it is important that the value of the $135,000

3    settlement be weighed against the risk of no recovery. In 2004, when the question of whether

4    exotic dancers are misclassified was litigated in San Francisco against another nightclub, the

5    jury returned a verdict in the favor of the defendant, awarding *nothing* to the plaintiff

6    (Chowder House, Inc. d/b/a/ Hungry I). *See Buel v. Chowder House, Inc.*, 2006 WL 1545860

7    (Cal. App. June 7, 2006) ("On appeal, Buel contends that the jury erred in finding her to be an

8    independent contractor. We conclude that the jury verdict was supported by substantial

9    evidence and affirm.").

10          Indeed, if the case were to go to trial and Defendant convinced the finder of fact that

11   Plaintiff and class members were not misclassified, the total damages for the class members

12   could be zero. If Plaintiff were to prevail on liability at trial, then the amount of damages

13   awarded could fall within a wide range, based on the number of workdays in which a class

14   member's pay fell below the minimum wage, the statute of limitations, and the potential

15   punitive damages, among other factors.

16          Because the variables in a wage-and-hour damage analysis cause the numbers to vary

17   so widely, as shown above, it is often difficult to pinpoint a realistic "potential recovery" in a

18   wage-and-hour case such as this one. With a gross value of $135,000 and a class size of

19   approximately (90) individuals, the proposed settlement is substantial. Class members are

20   eligible to recover significant financial benefit, on average $811.83 each. These

21   considerations indicate that the proposed settlement falls within the range of reasonableness,

22   warranting preliminary approval. This conclusion is reinforced by considering such factors as

23   the risk that a class might not be certified or might be significantly smaller than proposed, and

24   the time, expense, and complexity of the litigation, including risk associated with the pending

25   appellate proceeding and the possibility of further appellate proceedings.  In light of

26   Plaintiff's counsel's analysis of the estimated value of the claims, the gross settlement amount

27   of $135,000 is adequate and reasonable. *See* Declaration of Steven G. Tidrick, Esq.  in

28   Support of Plaintiff's Motion for Preliminary Approval (ECF No. 17-1) ("Tidrick Decl.").

1   While Class Counsel believe that Plaintiff's claims are meritorious, they are experienced

2   class action litigators, and understand that the outcome of the pending appeal, Plaintiff's

3   anticipated motion to certify the class, Defendant's anticipated motion to decertify the class, trial,

4   and any appeals were inherently uncertain, as well as likely to consume many more months, even

5   years.  Having extensively investigated the facts and researched the pivotal legal and factual

6   issues, counsel for the parties, experienced class action litigators well versed in wage and hour

7   law, arrived at a reasonable resolution through a protracted and arm's-length negotiation process,

8   which addressed all details of the settlement agreement.

9   A comparison of this settlement to settlements in other wage-and-hour cases alleging

10  misclassification of exotic dancers provides an additional basis for finding that the settlement is

11  "within the range of possible approval."  *See* Tidrick Decl. ¶¶ 10-12 & Exs. 3, 4, and 5.

12  The resulting settlement is, in light of all applicable factors, reasonable

13  <u>The Risk, Expense, Complexity, And Likely Duration of Further Litigation</u>

14  Another factor considered in approving a settlement is the complexity, expense, and likely

15  duration of the litigation. *Officers for Justice v. Civil Service Commission of the City and County*

16  *of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982). The Court must weigh the benefits of the

17  proposed settlement against the expense and delay involved in achieving an equivalent or more

18  favorable result at trial. *See, e.g., Young v. Katz,* 447 F .2d 431, 433-34 (5th Cir. 1971).

19  The policy that favors settlement of class actions and other complex cases applies with

20  particular force here. Employment cases, and specifically wage and hour cases, are expensive and

21  time-consuming. That this is a class action further amplifies the economies of time, effort, and

22  expense achieved by the settlement. The settlement, on the other hand, provides to all class

23  members substantial relief, promptly and efficiently. The settlement in this case is therefore

24  consistent with the "overriding public interest in settling and quieting litigation" that is

25  "particularly true in class action suits." *Van Bronkhorst* v. *Safeco Corp.,* 529 F.2d 943, 950 (9th

26  Cir. 1976) (footnote omitted); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.41 (citing cases).

27  Indeed, there are significant risks that the putative class would face if the litigation were to

28  continue.

9

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMO. OF
POINTS AND AUTHORITIES – *Roe v. Jose Torres L.D. Latin Club Bar, Inc. et al.,* Civil Case No. 3:19-cv-06088-LB

1    First, there is the risk that no FLSA collective or Rule 23 class would be certified, the risk

2    that an order certifying an FLSA collective or a Rule 23 class would be overturned on appeal, and

3    the risk that a certified class would later be decertified, each of which is a significant risk.

4        Second, there is the risk that Plaintiff could lose on the merits, either on summary

5    judgment or at trial.

6        The above-described risks favor final approval.

7    The Risk of Maintaining Class Action Status Throughout The Trial

8        As discussed above, there is the risk that no FLSA collective or Rule 23 class would be

9    certified, the risk that an order certifying an FLSA collective or a Rule 23 class would be

10   overturned on appeal, and the risk that a certified class would later be decertified, each of which

11   is a significant risk in a case such as this. Plaintiff has argued, and would continue to argue if the

12   case were to proceed, that class action status is warranted in this case. Nevertheless, the risk of

13   decertification is a factor that favors approval of the settlement. *See generally Gen. Tel. Co. of*

14   *Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (district court may decertify a class at any time).

15   Accordingly, this factor favors final approval.

16   The Amount Offered in Settlement

17       In an analogous class action, the court aptly observed that it would have been irrational for

18   most, and probably all, class members to pursue their claims on an individual basis "because of

19   the disparity between their litigation costs and what they hope to recover." *Local Joint Executive*

20   *Bd.,* 244 F.3d at 1163.

21       The recovery provided through the settlement is substantial, relative to the potential

22   recovery, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning

23   of highest hopes. . . . Naturally, the agreement reached normally embodies a compromise; in

24   exchange for the saving of cost and elimination of risk, the parties each give up something they

25   might have won had they proceeded with litigation ...." *Officers for Justice,* 688 F.2d at 634

26   (citation omitted). Accordingly, the settlement is not to be judged against a speculative measure

27   of what might have been achieved. *Linney* v. *Cellular Alaska P'ship,* 151 F .3d 1234, 1242 (9th

28   Cir. 1998). An additional consideration is that the settlement provides for payment to the class

10

1  now, rather than many years down the road, if ever. *See City of Detroit* v. *Grinnell Corp.,* 495 F

2  .2d 448, 463 (2d Cir. 1974).

3       Thus, considering the probability of lengthy litigation in the absence of a settlement, and

4  the risk of not prevailing at trial or on appeal, it is no exaggeration to predict that without using

5  the class action process, the relief that individual members of the class were likely to achieve

6  ranged from negligible to zero. Consequently, the settlement satisfies the criterion of adequacy.

7  *See* MANUAL FOR COMPLEX LITIGATION § 21.62 ("Adequacy of the settlement involves a

8  comparison of the relief granted relative to what class members might have obtained without

9  using the class action process.").

10       Accordingly, this factor favors final approval.

11       <u>The Extent of Discovery Completed and The Stage of the Proceedings</u>

12       During the litigation of the Action, mediation, and settlement communications, the parties

13  engaged in formal written discovery related to Plaintiff Jane Roe's claims, exchanged significant

14  facts, documents, and information regarding the named plaintiff and other allegedly aggrieved

15  employees and Class Members' working conditions, performance hours, compensation, and the

16  relative control exercised respectively by the Class Members and allegedly aggrieved employees

17  and Defendant over the manner and means under which Class Members and allegedly aggrieved

18  employees performed at the Nightclub, before agreeing to the terms of the settlement.

19       Discussions between counsel as well as the respective investigation and evaluation of the

20  claims and defenses have permitted both sides to assess the relative merits of the claims and the

21  defenses to those claims. The above-described investigation and evaluation were sufficient to

22  assess the merits of both sides' positions and to reach a compromise on a fair and equitable basis.

23  This favors final approval.

24       <u>The Experience and Views of Counsel</u>

25       Plaintiff's counsel are experienced class action litigators, and they recommend the

26  settlement. This factor favors final approval.

27       <u>The Presence of a Governmental Participant</u>

28       As in many employment class action cases, there was no governmental participant in the

11

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMO. OF
POINTS AND AUTHORITIES – *Roe v. Jose Torres L.D. Latin Club Bar, Inc. et al.,* Civil Case No. 3:19-cv-06088-LB

1    negotiation process, therefore this factor is neutral.

2                    <u>The Reaction of the Class Members to The Proposed Settlement</u>

3            As described above, the overall reaction of the class members reflects support of the

4    settlement. This favors final approval.

5                    <u>The Proposed Settlement Is Not The Product of Collusion</u>

6            The settlement negotiations were conducted at arm's length between experienced counsel.

7    This favors final approval.

8            For all the above reasons, and the for the reasons set forth in the filings that that Court

9    considered in granting preliminary approval of the settlement, Plaintiff respectfully requests that

10   the Court find that the Settlement Agreement is fair and reasonable, grant final approval, and

11   enter the proposed order filed herewith.

12   **VII.    THE PAGA PROVISIONS ARE REASONABLE**

13           The Court has discretion with regard to approval of the amount to be allocated for

14   payment to the California Labor & Workforce Development Agency (LWDA) in connection with

15   settlement of the PAGA claims. *See, e.g., Nordstrom Commission Cases*, 186 Cal. App. 4th 576

16   (2010) ("We conclude the trial court did not abuse its discretion in approving a settlement which

17   does not allocate any damages to the PAGA claims."). In this case, the settlement's allocation of

18   payment of $2,000 in connection with settlement of the PAGA claims (75% of which shall be

19   paid to the LWDA and 25% of which shall be paid to the Settlement Class members as part of the

20   Net Settlement Amount) reflects a reasonable valuation of the PAGA claims relative to the other

21   claims in the suit, and is in line with PAGA payments in other settlements that courts have

22   approved. *See e.g., Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759, at *25-*31

23   (N.D. Cal. Oct. 11, 2016) (Chen, J.) (finding that, in the context of a $6 million settlement, a

24   PAGA payment of $20,000 was reasonable); *Franco v. Ruiz Food Prods., Inc.*, 2012 U.S. Dist.

25   LEXIS 169057, at *41-*42 (E.D. Cal. Nov. 27, 2012) (finding that, in the context of a $2.5

26   million settlement, a PAGA payment of $10,000 was reasonable and in line with settlement

27   approval of PAGA awards in other cases) (citing cases). *See also Thurman v. Bayshore Transit*

28   *Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1148 (2012) (discussing the "general rule" regarding the

12

1   75/25 split).

2   **VIII.   THE COURT IS TO SELECT THE *CY PRES* RECIPIENT**

3       The settlement provides that class members shall have one hundred eighty (180) days

4   from the date their individual settlement payment checks are prepared to cash their settlement

5   checks, and that any checks that remain uncashed upon the expiration of that 180-day time period

6   will be void, and shall revert to *cy pres*. *See* Settlement Agreement at § 13(b). The settlement

7   agreement proposes that the *cy pres* recipient be the Saint Francis Center of Redwood City (which

8   provides food, clothing, and other essential services for working poor families) or if that entity is

9   not approved by the Court, The Justice and Diversity Center of the Bar Association of San

10  Francisco (a public interest law non-profit organization). *See id*. The settlement provides the

11  Court with discretion to modify the provisions regarding uncashed checks. *See id*.

12      The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions

13  of a class action settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*,

14  663 F.3d 1034, 1036 (9th Cir. 2011) (quoting *Six (6) Mexican Workers v. Ariz. Citrus*

15  *Growers,* 904 F.2d 1301, 1307–08 (9th Cir. 1990)). "*Cy pres* distributions must account for the

16  nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of

17  the silent class members, including their geographic diversity." *See id.*

18      "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary." *Dennis*

19  *v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). To avoid the "many nascent dangers to the

20  fairness of the distribution process," we require that there be "a driving nexus between

21  the plaintiff class and the *cy pres* beneficiaries." *Id*. (quoting *Nachshin*, 663 F.3d at 1038).

22  "A *cy pres* award . . . must not benefit a group too remote from the plaintiff class . . . ." *Id*.

23  (quoting *Six Mexican Workers,* 904 F.2d at 1308).

24      There is a driving nexus between the plaintiff class and the Saint Francis Center of

25  Redwood City, which provides food, clothing, and other essential services for working poor

26  families.

27      The proposed order, filed herewith, at paragraph 25, proposes that the Settlement

28  Administrator distribute any *cy pres* payments to the Saint Francis Center of Redwood City, with

13

the following exception: Payments for the settlement class members for whom the Settlement Administrator lacks mailing addresses and/or whose notice the Settlement Administrator deemed undeliverable, *see* Gomez Decl. ¶¶ 10-12 be submitted by the Settlement Administrator to the California State Controller's Office pursuant to the procedures of the State of California's Unclaimed Property Law.

**IX.    CONCLUSION**

Plaintiff respectfully requests that the Court enter the proposed order filed herewith.

DATED: August 13, 2020                    Respectfully submitted,

THE TIDRICK LAW FIRM LLP

By:      /s/ Steven G. Tidrick

_____
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662

Attorneys for Plaintiff Jane Roe

14