1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                          San Francisco Division

11   JANE ROE,                              Case No. 19-cv-06088-LB

12              Plaintiff,
                                            **ORDER GRANTING FINAL**
13        v.                                **APPROVAL**

14   JOSE TORRES L.D. LATIN CLUB BAR,       Re: ECF No. 29
     INC,
15
                Defendant.
16

17                              **INTRODUCTION**

18       This is a wage-and-hour and employee-misclassification case. It is a putative collective action

19   under the Federal Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.*, and a putative class

20   action under Federal Rule of Civil Procedure 23.[1] The plaintiffs, current and former exotic

21   dancers, claim that their employer, defendant Jose Torres L.D. Latin Club Bar, Inc, d/b/a Hanky

22   Panky Club, misclassified them as independent contractors under the FLSA and California law

23   and so failed to pay them requisite compensation. The parties settled their case, and the court

24   granted the plaintiff's unopposed motion for preliminary approval of the proposed settlement.[2]

25

26   ───────────────────
     [1] Second Am. Compl. ("SAC"), Ex A to Notice of Removal – ECF No. 1-1 at 18−39 (¶¶ 63–187).
27   Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-
     generated page numbers at the top of documents.
28   [2] Order –ECF No. 23.

United States District Court
Northern District of California

1    The plaintiff moved for, and the defendant did not oppose, final approval of the settlement and

2    attorney's fees and costs.[3] The court held a fairness hearing on August 27, 2020 and now approves

3    the settlement.

4                                          **STATEMENT**

5    **1. The Lawsuit**

6         On December 4, 2017, Plaintiff Jane Roe filed a class-action complaint in the San Mateo

7    County Superior Court asserting wage-and-hour claims on behalf of herself and similarly situated

8    individuals who, during the class period, worked for the defendant as exotic dancers.[4] On February

9    16, 2018, she filed an amended complaint adding a claim under California's Private Attorney

10   General Act ("PAGA").[5] In December 2018, the parties settled the case after a mediation.[6] The

11   state court denied preliminary approval of that settlement.[7] The plaintiff filed a second amended

12   complaint ("SAC") — which is the operative complaint — in September 2019 that added claims

13   under the Redwood City Minimum Wage Ordinance and the FLSA.[8] The complaint has 11 claims:

14   (1) failure to pay minimum wages, in violation of the California Labor Code; (2) failure to pay

15   overtime wages, in violation of the Labor Code and state law; (3) failure provide itemized wage

16   statements, in violation of the Labor Code; (4) failure to pay waiting-time penalties, in violation of

17   the Labor Code; (5) failure to pay the wages owed every pay period, in violation of the Labor

18   Code; (6) common-law conversion (based on a failure to pay gratuities from consumers); (7)

19   failure to reimburse for expenses, in violation of the Labor Code; (8) a violation of California's

20   Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., based on unfair business

21

22

23   _____

24   [3] Mots. – ECF Nos. 28–29.

     [4] Notice of Removal – ECF No. 1 at 1 (¶ 1).
25
     [5] Mot. – ECF No. 17 at 4.
26
     [6] *Id.* at 4–5.
27
     [7] Tidrick Decl. – ECF No. 17-1 at 5–6 (¶¶ 14–15); State Court Order, Ex. 6 to Tidrick Decl. – ECF No.
     17-1 at 240–47.
28
     [8] SAC, Ex A to Notice of Removal – ECF No. 1-1.

United States District Court
Northern District of California

1

2

practices; (9) a PAGA claim (predicated on Labor Code violations; (10) a violation of the FLSA; and (11) failing to pay the minimum wage required by the Redwood Ordinance.[9]

3

On September 25, 2019, the defendant removed the case to federal court.[10]

4

5

6

7

8

9

The parties engaged in discovery and ultimately settled the case pursuant to a settlement agreement that differs from the original settlement agreement in two respects.[11] First, the new settlement agreement requires the defendant to offer employment status to all individuals working for the defendant as exotic dancers now and in the future.[12] Second, the new settlement agreement provides that checks will be mailed automatically to all settlement class members who do not opt out, without any requirement to submit a claim form.[13]

10

11

12

Following the plaintiff's unopposed motion, the court preliminarily approved the settlement after a hearing.[14] The plaintiff moved for final approval of the settlement and attorney's fees and costs.[15] The court held a fairness hearing on August 27, 2020.

13

14

**2.  Settlement**

15

**2.1  Settlement Class**

16

17

There are 93 class members.[16] The settlement agreement defines the class period, the proposed class, and the amounts available for distribution:

18

19

(a) The "Class Period" for purposes of this Stipulation and settlement means the period from December 4, 2013, through date the Court enters an order granting preliminary approval of the Parties' settlement pursuant to the terms of this Stipulation.

20

21

(b) The "Class" consists of all individual(s) who, during the Class Period, performed as exotic dancers at Jose Torres L.D. Latin Club Bar, Inc. d/b/a Hanky Panky Club ("the

22

23

[9] *Id.* at ECF No. 1-1 at 18–39 (¶¶ 63–187)

24

[10] Notice of Removal – ECF No. 1.

[11] Mot. – ECF No. 29 at 12; Settlement Agreement – ECF No. 14.

25

[12] Settlement Agreement – ECF No. 14 at 11 (§ 15).

26

[13] *Id.* at 9 (§ 10(b)); *see also* Tidrick Decl. – ECF No. 17-1 at 6 (¶ 15).

[14] Minute Entry – ECF No. 22; Order – ECF No. 23.

27

[15] Mots. –ECF Nos. 28–29.

28

[16] Gomez Decl. – ECF No. 29-1 at 3 (¶ 3).

United States District Court
Northern District of California

Nightclub") pursuant to an "independent contractor" agreement. A "Class Member" is a member of the Class. There are approximately ninety (90) Class Members.

(c) "Settlement Class" means all Class Members who do not timely and properly excluded themselves from the terms of this Stipulation and settlement. A "Settlement Class Member" is a member of the Settlement Class.

(d) "Cash Pool Class" means all Settlement Class Members who sign, deposit, and/or cash a settlement check mailed pursuant to this settlement and who thereby consent to join as party plaintiffs in the claims asserted under the Federal Labor Standard Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA Claims") in this Litigation. A "Cash Pool Claimant" is a member of the Cash Pool Class.[17]

## 2.2  The Cash Pool

The settlement includes a $135,000 cash pool that the settlement administrator will distribute as follows:[18]

    (i)       Payments to the Settlement Class Members;

    (ii)      Plaintiff's attorney's fees and costs (as determined by the court);

    (iii)    $1,500 to California's Labor & Workforce Development Agency ("LWDA") as payment for the PAGA claims;

    (iv)    A service award to the class representative of $10,000 (if approved by the court);

    (v)     Administrative costs of the settlement; and

    (vi)    Any *cy pres* payments. [19]

The total PAGA payment is $2,000, and 75 percent, or $1,500, will be paid to the LWDA as PAGA civil penalties, and 25 percent, or $500, will be distributed to Settlement Class members.[20]

The plaintiff's counsel asks for $33,750 in attorney's fees, which is 25% of the gross settlement amount, and costs of $5,000.[21]

The administration costs for the settlement is $9,250.[22]

The allocation to the class members is as follows:

---

[17] Settlement Agreement – ECF No. 14 at 4–5 (§ 5).

[18] *Id.* at 5 (§ 6(a)), 9 (§ 10(a)).

[19] *Id.* at 5–6 (§ 6).

[20] *Id.* at 5 (§ 6), n.1.

[21] *Id.* at 6 (§ 7), 10 (§ 14(a)); Mot. – ECF No. 28 at 2–3.

[22] Gomez Decl. – ECF No. 29-1 at 5 (¶ 18).

United States District Court
Northern District of California

(a) Cash Payments shall be distributed to Settlement Class members *pro rata* based on the number of "Performance Months" (defined as any calendar month during the Class Period in which a Class Member had at least one date of performance — i.e., a connected block of time that the Class Member was at the Nightclub to perform, regardless of the fact that the date extended over more than one calendar day) worked during the Class Period (which is, as noted, is the time period from December 4, 2013 through date the Court enters an order granting preliminary approval of the Parties' settlement pursuant to the terms of this Stipulation).

(b) Determination of Performance Months. Within fourteen (14) days after entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the number of Performance Months accrued by each Settlement Class member during the Class Period.[23]

The individual-settlement awards range from $78.32 to $4,464.21. The average settlement award is $811.83.[24] Settlement checks will be mailed and will expire 120 days from the date of issuance by the Settlement Administrator.[25] The value of any expired checks will be paid to the *cy pres* recipient.[26]

### 2.3    Changed Business Practices

Each exotic dancer who continues to work for the defendant, and each person who applies to perform as an exotic dancer, will be offered employment status.[27] The defendant will offer current and prospective exotic dancers an hourly wage and one logo costume per month to wear while performing.[28]

### 2.4    Release

First, if a class member does not exclude herself (as described under the notice) and does not cash the mailed check, she will release the claims in the case but not the FLSA claims.[29] Second, if a class member cashes the check, she will release all claims, including the FLSA claim.[30]

---

[23] Settlement Agreement – ECF No. 14 at 9 (§ 9).

[24] Gomez Decl. – ECF No. 29-1 at 5 (¶ 17).

[25] Settlement Agreement – ECF No. 14 at 9 (§ 10(b)), 10 (§ 12).

[26] *Id.* at 10 (§ 13(b)).

[27] *Id.* at 11 (§ 15).

[28] *Id.*

[29] *Id.* at 5 (§§ 5(c)–(d)), 13–14 (§ 18(b)).

[30] *Id.* at 5 (§ 5(d)), 14 (§ 18(c)).

The settlement agreement includes a general release for the named plaintiff.[31]

## 2.5    Administration

The court previously approved CPT Group, Inc., to administer the settlement in accordance with the requirements under the Settlement Agreement.[32] CPT complied with these procedures.

On May 26, 2020, CPT received from defendant's counsel a list of the 93 Class Members with the following information where available: (1) names; (2) mailing addresses; (3) telephone numbers; (4) date of employment; and (5) months worked during the Class Period.[33] The list was missing certain Class Members' names and addresses. CPT thus conducted a search in the National Change of Address to update the addresses.[34] It also maintained a case-specific toll-free telephone number and a website, which became available on June 4, 2020.[35]

On June 4, 2020, CPT sent the class notices to 68 Class Members for whom it had names and addresses. For any returned noticed, CPT conducted skip tracing to locate updated addresses and re-mailed the notices. Ultimately, only one notice was deemed undeliverable.[36]

For the remaining 25 Class Members for whom CPT did not have a name or address, CPT sent a text message to the number on file instructing the Class Member on how to get information regarding the case.[37] From the text message campaign, two individuals contacted CPT and received notices.[38]

As of August 21, 2020, CPT has not received any objections or opt-out requests.[39]

---

[31] *Id.* at 15 (¶ 18(d)).

[32] Order – ECF No. 23 at 11.

[33] Gomez Decl. – ECF No. 29-1 at 3 (¶ 3).

[34] *Id.* at 3 (¶¶ 4–5).

[35] *Id.* (¶¶ 6–7).

[36] *Id.* at 3–4 (¶¶ 8–10).

[37] *Id.* at 4 (¶ 11); Text Message Notification, Ex. B to Gomez Decl. – ECF No. 29-1 at 14.

[38] Gomez Decl. – ECF No. 29-1 at 4 (¶ 12).

[39] Gomez Suppl. Decl. – ECF No. 32 at 2 (¶ 3).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANALYSIS**

**1. Jurisdiction**

The court has federal-question jurisdiction under 28 U.S.C. § 1331 for the FLSA claim and supplemental jurisdiction under 28 U.S.C. § 1367 for the state-law claims.

**2. Certification of Settlement Class**

The court determines whether the settlement classes meet the requirements for class certification first under Rule 23 and then under the FLSA.

### 2.1 Rule 23 Requirements

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019).

Class certification requires the following: (1) the class is so numerous that joinder of all members individually is "impracticable;" (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the person representing the class will fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953. Also, the common questions of law or fact must predominate over any questions affecting only individual class members, and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). All claims arise from the defendant's uniform practices, and thus liability can be determined on a class-wide basis. *Betorina v. Ranstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017).

The court finds (for settlement purposes only) that the proposed settlement classes meet the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy. Also, under Rule

United States District Court
Northern District of California

23(b)(3) (and for settlement purposes only), common questions predominate over any questions affecting only individual members, and a class action is superior to other available methods.

First, there are 93 Class Members.[40] The class is numerous. *Nelson v. Avon Prods., Inc.*, No. 13-cv-02276-BLF, 2015 WL 1778326, at *5 (N.D. Cal. April 17, 2015) ("Courts have repeatedly held that classes comprised of 'more than forty' members presumptively satisfy the numerosity requirement") (cleaned up).

Second, there are questions of law and fact common to the class that predominate over any individual issues. The common questions are whether the defendant misclassified all exotic dancers as independent contractors during the class period, the defendants' uniform policies and practices regarding compensation. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Betorina*, 2017 WL 1278758 at *4. These common questions predominate over any questions affecting only individual members.

Third, the claims of the representative parties are typical of the claims of the class. The representative plaintiff and all class members allege wage-and-hours and FLSA violations based on similar facts. All representatives possess the same interest and suffer from the same injury. *Cf. Betorina*, 2017 WL 1278758 at *4.

Fourth, the representative plaintiff fairly and adequately protects the interests of the class. The factors relevant to a determination of adequacy are (1) the absence of potential conflict between the named plaintiff and the class members, and (2) counsel chosen by the representative party who is qualified, experienced, and able to vigorously conduct the litigation. *In re Hyundai and Kia*, 926 F.3d at 566 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). The factors exist here: the named plaintiff has shared claims and interests with the class (and no conflicts of interest), and has retained qualified and competent counsel who have prosecuted the case vigorously. *Cf. id.*; *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

---

[40] *Id.* at 3 (¶ 3).

1    Finally, a class action is superior to other available methods for fairly and efficiently

2    adjudicating the controversy.

3        In sum, the prerequisites of Fed. R. Civ. P. 23(a) and (b)(3) are met. The court conditionally

4    certifies the class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only.

5    **2.2    FLSA Class**

6        The FLSA authorizes "opt-in" representative actions where the complaining parties are

7    "similarly situated" to other employees. 29 U.S.C. § 216(b); *see generally Tyson Foods, Inc. v.*

8    *Bouaphakeo*, 136 S. Ct. 1036, 1042 (2016). The class representative worked as an exotic dancer

9    during the class period, and her wage-and-hour claims — and related issues such as her

10   employment status — present common fact and law questions. The court certifies the FLSA class

11   for settlement purposes only.

12

13   **3.   Approval of Settlement**

14       Settlement is a strongly favored method for resolving disputes, particularly "where complex

15   class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th

16   Cir. 1992); *see, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may

17   approve a proposed class-action settlement only "after a hearing and on finding that it is fair,

18   reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed

19   settlement is ideal or the best possible; it determines only whether the settlement is fair, free of

20   collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *See Hanlon*,

21   150 F.3d at 1027 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to

22   assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense,

23   complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status

24   throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and

25   the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a

26   government participant; and (8) the reaction of class members to the proposed settlement. *Id*. at

27   1026 (citation omitted).

28

United States District Court
Northern District of California

1    When parties "negotiate a settlement agreement before the class has been certified, "settlement

2    approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally

3    be required under Rule 23(e).'" *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir.

4    2019) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). "Specifically, 'such

5    settlement agreements must withstand an even higher level of scrutiny for evidence of collusion or

6    other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's

7    approval as fair.'" *Id*. at 1049 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,

8    946 (9th Cir. 2011)).

9        The court has evaluated the proposed settlement agreement for overall fairness under the

10   *Hanlon* factors and concludes that it is free of collusion and approval is appropriate.

11       First, the settlement provides good value. The gross settlement amount of $135,000 represents

12   approximately 7.07% of the maximum potential recovery of $1,909,240.[41] Courts in this district

13   have approved settlements at comparable rates compared to the maximum recoverable at trial. *See,*

14   *e.g.*, *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4–5

15   (N.D. Cal. June 17, 2015) (approving a final settlement representing 7.3% of the plaintiffs'

16   estimated trial award in wage-and-hour class action); *Balderas v. Massage Envy Franchising,*

17   *LLC*, No. 12-cv-06327-NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (granting

18   preliminary approval of gross settlement representing 8% of the maximum recovery and net

19   settlement representing 5% of the maximum recovery), *final approval*, 12-cv-06327-NC – ECF

20   No. 78 (N.D. Cal. Mar. 10, 2015). In addition, the PAGA allocation ($2,000 out of $135,000, or

21   approximately 1.5-percent) is within the range of reasonable settlements. *Cf. Van Kempen v.*

22   *Matheson Tri-Gas, Inc.*, No.15-cv-00660-HSG, 2017 WL 3670787, at *10 (N.D. Cal. Aug. 25,

23   2017) (approving PAGA allocation of $5,000 from a settlement fund of $370,000, or 1.3-percent).

24   Furthermore, the settlement changes the defendant's business practices and requires it to offer its

25   exotic dancers the opportunity to perform as employees.[42]

26

27   _____

     [41] *See* Tidrick Decl. – ECF No. 17-1 at 2 (¶ 5); Mot. – ECF No. 29 at 8.

28   [42] Settlement Agreement – ECF No. 14 at 11 (§ 15).

Second, the value of the settlement is significant compared to the litigation risks and uncertainties. The maximum recovery assumes that the jury will find that the defendant misclassified the Class Members as independent contractors, which is not a guaranteed outcome. *See Buel v. Chowder House, Inc.*, 2006 WL 1545860 (Cal. App. June 7, 2006) ("On appeal, Buel contends that the jury erred in finding her to be an independent contractor. We conclude that the jury verdict was supported by substantial evidence and affirm."). When viewed against the risk of no recovery, this settlement is fair. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) (litigation risks, including maintaining class-action status, favor settlement approval). Moreover, settlement allows payment to the Class Members now, before costly and protracted litigation.

Third, a class action allows class members — who otherwise would not pursue their claims individually because costs would exceed recoveries — to obtain relief.

Finally, the settlement is the product of serious, non-collusive, arm's-length negotiations, reached after the parties engaged in formal discovery efforts, including document productions and interrogatories, to assess the strengths of their claims.[43] *Cf. Dyer*, 303 F.R.D. at 332 (parties "conducted sufficient discovery to make an informed decision regarding the adequacy of the settlement," where they "requested, propounded, and reviewed numerous discovery documents; conducted and participated in depositions; [and] interviewed [defendant's] employees").

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). The court approves the settlement.

For the same reasons, the court approves the settlement of the FLSA collective action.

## 4.  Class Representative, Class Counsel, and Claims Administrator

The court previously appointed Jane Roe as the class representative. She has claims that are typical of members of the class generally, and she is an adequate representative of the class members. It also appointed Steven G. Tidrick and Joel Young of the Tidrick Law Firm LLP as

---

[43] *See* Tidrick Decl. – ECF No. 17-1 at 2 (¶ 4), 6 (¶ 14).

United States District Court
Northern District of California

1    class counsel for settlement purposes only. *See* Fed. R. Civ. P. 23(a) & (g)(1). They have the

2    requisite qualifications, experience, and expertise in prosecuting class actions.

3        The court approves CPT's costs of $9,250.[44]

4

5    **5.    Class Notice**

6        The class administrator provided notice to the members of the class in the form that the court

7    approved previously. The notice met the legal prerequisites: it was the best notice practicable,

8    satisfied the notice requirements of Rule 23, adequately advised class members of their rights

9    under the settlement agreement, met the requirements of due process, and complied with the

10    court's order regarding court notice. The form of notice fairly, plainly, accurately, and reasonably

11    provided class members with all required information, including (among other things): (1) a

12    summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of

13    the material terms of the settlement, including the estimated payment; (4) a disclosure of the

14    release of the claims; (5) an explanation of class members' opt-out rights, a date by which they

15    must opt out, and information about how to do so; (6) the date and location of the final fairness

16    hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and

17    class-representative service awards.[45]

18

19    **6.    CAFA Notices**

20        On May 26, 2020, the plaintiff's counsel provided notice of the settlement showing

21    compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the appropriate

22    federal and state officials.[46] The court's final approval hearing is more than 90 days after service

23    as required by 28 U.S.C. § 1715(d). At the hearing, class counsel also represented that the

24    necessary PAGA notices have been provided.

25

26

27

[44] Gomez Decl. – ECF No. 29-1 at 5 (¶ 18).

[45] Class Notice, Ex. A to Gomez Decl. – ECF No. 29-1 at 7–12.

28    [46] Mot. – ECF No. 29 at 3.

United States District Court
Northern District of California

1   **7.   Service Awards**

2       The settlement proposes a service award to Ms. Roe of $10,000. The court reduces it to

3   $5,000.

4       District courts must evaluate proposed awards individually, using relevant factors that include

5   "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class

6   has benefitted from those actions, … [and] the amount of time and effort the plaintiff expended in

7   pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are

8   intended to compensate class representatives for work done on behalf of the class, to make up for

9   financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

10  willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp*., 563 F.3d

11  948, 958–59 (9th Cir. 2009) (citation omitted). The Ninth Circuit has "noted that in some cases

12  incentive awards may be proper but [has] cautioned that awarding them should not become routine

13  practice." *Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing

14  *Staton*, 327 F.3d at 975–78). Also, district courts "must be vigilant in scrutinizing all incentive

15  awards to determine whether they destroy the adequacy of the class representatives." *Id*. at 1164.

16  In this district, a $5,000 incentive award is "presumptively reasonable." *Bellinghausen v. Tractor*

17  *Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases).

18      Ms. Roe's efforts in the case include meeting with her attorneys, gathering and reviewing

19  documents, identifying witnesses, and conferring regarding settlement negotiations.[47] In total, she

20  spent about 45 hours prosecuting the case.[48]

21      The proposed award is high considering the hours Ms. Roe spent and the average class

22  recovery of $811.83 (with the lowest recovery of $78.32 and highest recovery of $4,464.21). *See,*

23  *e.g., Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7–8 (N.D. Cal.

24  Feb. 6, 2012) (awarding $12,500 where the plaintiff spent "more than 100 hours on this case

25  (which included being deposed twice)" and the defendant "pursued disclosure of her private

26

27  ---
    [47] Tidrick Decl. – ECF No. 28-1 at 8 (¶ 18).

28  [48] *Id.*

United States District Court
Northern District of California

information"); *Dyer*, 303 F.R.D. at 335–36 (awarding $10,000 where the plaintiff was deposed, attended a four-day mediation (which required her to travel and miss work), and spent "more than 200 hours assisting in the case"); *Bellinghausen.*, 306 F.R.D. at 267–68 (awarding $15,000 where the plaintiff spent 73 hours on the case, attended mediation, and was rejected by potential employers because of his status as class representative); *cf. Bolton v. U.S. Nursing Corp.*, No. 12-cv-4466-LB, 2013 WL 5700403, at *6 (N.D. Cal. Oct. 18, 2013) (approving $10,000 in incentive award where the average recovery is $595.91 but "the largest settlement recovery is estimated to be $4,602.67, and 204 class members will receive more than $1,500").

Given the hours spent, the recoveries here, and the points of reference from other cases, the court approves the presumptive $5,000.

## 8. Attorney's Fees and Costs

The plaintiff's counsel asks for $33,750 in attorney's fees (25 percent of the settlement amount) and $5,000 in costs.[49] The court awards the 25-percent benchmark.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Fee provisions in class-action settlements must be reasonable. *In re Bluetooth.*, 654 F.3d at 941. The court is not bound by the parties' settlement agreement as to the amount of fees. *Id.* at 942–43. The court must review fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted).

When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts

---

[49] Mot. – ECF No. 28 at 2–3.

United States District Court
Northern District of California

1   may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*;

2   *Hanlon*, 150 F.3d at 1029.

3      Where the settlement involves a common fund, courts typically award attorney's fees based on

4   a percentage of the settlement fund. The Ninth Circuit has established a "benchmark" that fees

5   should equal 25% of the settlement, although courts diverge from the benchmark based on factors

6   that include "the results obtained, risk undertaken by counsel, complexity of the issues, length of

7   the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*,

8   No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *see also*

9   *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *In re*

10  *Pac. Enter. Secs. Litig.*, 47 F.3d at 379; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d

11  1301, 1311 (9th Cir. 1990).

12     When determining the value of a settlement, courts consider the monetary and non-monetary

13  benefits that the settlement confers. *See, e.g.*, *Staton*, 327 F.3d at 972–74; *Pokorny v. Quixtar, Inc.*,

14  No. C-07-0201-SC, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) ("The court may properly

15  consider the value of injunctive relief obtained as a result of settlement in determining the

16  appropriate fee."); *In re Netflix Privacy Litig.*, No. 5:11-CV-0379-EJD, 2013 WL 1120801, at *7

17  (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the *cy pres*

18  method of distribution, and the injunctive relief").

19     Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total

20  benefits being made available to class members rather than the actual amount that is ultimately

21  claimed. *Young v. Polo Retail, LLC*, No. C-02-4547-VRW, 2007 WL 951821, at *8 (N.D. Cal.

22  Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997)

23  ("district court abused its discretion in basing attorney fee award on actual distribution to class"

24  instead of amount being made available)).

25     If the court applies the percentage method, it then typically calculates the lodestar as a "cross-

26  check to assess the reasonableness of the percentage award." *See, e.g.*, *Weeks v. Kellogg Co.*, No.

27  CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano*

28  *v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters., Inc.*, 111 Cal. App. 3d 215,

226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc*., 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id*.; *accord Laffitte v. Robart Half Internet, Inc*, 1 Cal. 5th 480, 503–06 (2016) (holding, under California law, that "the percentage method to calculate [attorney's] fee in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

Based on counsel's submissions, the fee award is appropriate as a percentage of the common fund and is supported by a lodestar cross-check, given the results obtained, the lack of objections to the settlement, and the counsel's litigating the case on a contingency basis.[50] *Cf. e.g.*, *Bellinghausen*, 306 F.R.D. at 259–65 (N.D. Cal. Mar. 20, 2015) (approving attorney's fees equal to the benchmark 25 percent of the common fund); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966-LB, 2013 WL 3988771, at *4–5 (N.D. Cal. Aug. 2, 2013) (awarding 33 percent of the settlement fund as attorney's fees "given the extensive litigation in the case[,] [] the successful results achieved[,]" and the contingency risk); *Villalpando v. Excel Direct Inc.*, Nos. 12-cv-04137-JCS, 13-cv-03091-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) (awarded one-third of the settlement fund as reasonable attorney's fees because of "the contingent risk, [c]ounsel's documented lodestar, the complex and protracted nature of the case, and strong result for the case").

The lodestar cross-check supports this conclusion. The billing rates are normal and customary (and thus reasonable) for lawyers of comparable experience doing similar work.[51] *Cuviello v. Feld Entm't, Inc*., No. 13-cv-04951-BLF, 2015 WL 154197, at *2–3 (N.D. Cal. Jan. 12, 2015) ("court has broad discretion in setting the reasonable hourly rates used in the lodestar calculation")

---

[50] Tidrick Decl. – ECF No. 28-1 at 2–8 (¶¶1–16).

[51] *Id*. at 3–4 (¶ 6).

1  (citation omitted); *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own

2  experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020). Counsel

3  provided billing records justifying the hours worked in the case. The calculated lodestar is

4  $50,189, which is higher than the requested fee of $33,750.[52] This indicates that the requested fee

5  is reasonable. *Pierce v. Rosetta Stone, Ltd.*, C 11-01283-SBA, 2013 WL 5402120, at *6 (N.D. Cal.

6  Sep. 26, 2013) ("the requested fee award[, which is lower than the lodestar,] results in a so-called

7  negative multiplier, which suggests that the percentage of the fund amount is reasonable and

8  fair").

9          The court awards the reasonable out-of-pocket costs of $5,000. Fed. R. Civ. P. 23(h); *see*

10  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover reasonable expenses

11  that would typically be billed to paying clients in non-contingency matters); *Van Vranken v. Atl.*

12  *Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action

13  settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by

14  law or by the parties' agreement." Fed. R. Civ. P. 23(h). Counsel has expended $5,875.75 in

15  litigation cost to date, which is more than the cost reimbursement that counsel seeks.[53]

16          In sum, the court awards $33,750 in attorney's fees and $5,000 in costs.

17

18  **9.  *Cy Pres* Award**

19          The court approves the *cy pres* award to the Saint Francis Center of Redwood City, which,

20  among other things, provides food, clothing, and other essential services for working poor

21  families.[54] It accounts for and has a nexus to the nature of the lawsuit, the objectives of the

22  statutes, and the interest of the silent class members. *See Lane v. Facebook, Inc.*, 696 F.3d 811,

23  818–22 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038–41 (9th Cir. 2011).

24

25

26  _____

27  [52] *Id.*

    [53] *Id.* at 8 (¶ 17).

28  [54] Mot. – ECF No. 29 at 14.

United States District Court
Northern District of California

**10.  Exception to *Cy Pres*[55]**

Payments for the settlement class members for whom the settlement administrator lacks mailing addresses and/or whose notice settlement administrator deemed undeliverable shall be submitted, by the settlement administrator, to the California State Controller's Office pursuant to the procedures of the State of California's Unclaimed Property Law. *Cf. Roberts v. Marshalls of CA, LLC*, No. 13-cv-04731-MEJ, 2018 WL 510286, at *4, 13 (N.D. Cal. Jan. 23, 2018) (granting final approval of settlement requiring "the settlement administrator to transmit any unclaimed funds . . . to the State of California Controller's Office, Unclaimed Property Fund, in accordance with California law regarding such escheatment").

**11.  Release**

The claims are released as provided in the Settlement Agreement.

**12.  Jurisdiction**

Without affecting the finality of this final order and judgment in any way, this court retains jurisdiction over the following: (a) effectuating and implementing the Settlement Agreement and its terms; (b) supervising all aspects of the administration of the Settlement Agreement; (c) determining whether, in the event that an appeal is taken from any aspect of this final order and judgment, whether to require the appellant to post a bond or provide other security, and such other matters as the court may order; (d) enforcing and administering the Settlement Agreement, including any releases executed in connection therewith, and the provisions of this final order and judgment; (e) adjudicating any disputes that arise under the Settlement Agreement; and (f) any other matters related or ancillary to the foregoing.

---

[55] The remaining provisions in this order are taken from the proposed order's identification of relevant provisions from the settlement agreement. Proposed Order – ECF No. 29-2 at 9–11.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

The court (1) certifies the class and the FLSA collective for settlement purposes only, (2) approves the settlement and authorizes the distribution of funds (as set forth in this order), (3) appoints the class representative and class counsel, (4) approves $33,750 in attorney's fees, $5,000 in costs, $9,250 for CPT's administration costs, and a service award of $5,000 to Ms. Roe, and (5) orders the parties and CPT to carry out their obligations in the settlement agreement.

**IT IS SO ORDERED.**

Dated: August 27, 2020

_____
LAUREL BEELER
United States Magistrate Judge